**UNITED STATES of America**

v.

**Frederico VASQUEZ, Lino J. Mendoza and Noon Fong, Defendants.**

United States District Court
E. D. New York.

May 5, 1960.

Gilbert S. Rosenthal, New York City, for the defendant Noon Fong, for the motion.

Cornelius W. Wickersham, Jr., U. S. Atty., Brooklyn, N. Y., Francis W. Rhinow, Greenport, N. Y., Asst. U. S. Atty., of counsel, in opposition.

RAYFIEL, District Judge.

On March 24, 1960, with the consent of the defendants, an information containing three counts was filed in this Court against them. Counts 1 and 2 thereof are directed against the defend-

ants Vasquez and Mendoza alone, Count 1 charging them with knowingly and unlawfully purchasing a quantity of heroin hydrochloride which was not in or from an original package bearing tax stamps, in violation of Section 4704(a) of Title 26 and Section 2 of Title 18 of the United States Code, and Count 2 charging them with knowingly and unlawfully importing said drug into the United States, in violation of Section 174 of Title 21 and Section 2 of Title 18 of said Code. Count 3 charges all three defendants with knowingly, wilfully and unlawfully conspiring to commit the act charged in Count 2, in violation of said Section 174. On March 24, 1960 the defendants were duly arraigned. Vasquez and Mendoza pleaded guilty to Count 1 of the information, while Noon Fong entered a plea of not guilty.

Noon Fong has moved under Rule 41 (e) of the Federal Rules of Criminal Procedure, 18 U.S.C., for an order suppressing certain evidence, consisting of narcotics, seized from his person and his residence at No. 19½ Pitt Street, in Manhattan, on February 3, 1960, and enjoining the use thereof on the trial, and directing the return of a sum of money taken from his person and any notes or letters which may have been taken from his home on the occasion in question.

It is his claim that at about 7:30 P.M. on February 3rd, 1960, as Vasquez and Mendoza, who had been visiting him, were leaving his residence, six or seven men, who, he later learned, were Customs Agents, pushed them back and forced their way into his apartment, made a search thereof, found two packages and several cigarettes which they claim contained heroin, as well as a sum of money, all of which they seized; that they neither showed him a warrant nor stated that they had one; that it was not until after they had completed their search that the men informed him that he was under arrest. He contends that the search of his apartment, the aforementioned seizure, and his arrest were illegal, and violative of his rights under the Fourth and Fifth Amendments of the Constitution of the United States. Concededly, the arrest, search and seizure were accomplished by the United States Customs Agents without a warrant.

A hearing was held on March 31, 1960, at which the testimony of Customs Agents Malony and Flynn and the defendants Noon Fong and Vasquez was adduced. There was some conflict in the testimony, but it was limited to the events which occurred immediately prior to and after the entry of the Customs Agents into Fong's apartment. These are the facts as I find them.

Vasquez and Mendoza were seamen aboard the S.S. Marit Maersk. In December, 1959, when the vessel was docked at Hong Kong, they received a quantity of heroin hydrochloride from an unknown person who requested them to deliver it to one Chow Foo Yue, an alias of the defendant Noon Fong, whose name and address appeared on a note or letter given to them by said unknown person, with instructions to turn it over to the addressee, who would, upon the delivery of the heroin, give them a sum of money.

The S.S. Marit Maersk arrived at Pier 11, Atlantic Basin, Brooklyn, New York, on or shortly prior to February 1, 1960. At about 8:00 P.M. on that day Vasquez and Mendoza called at Noon Fong's apartment at 19½ Pitt Street, in Manhattan, and delivered the aforementioned note or letter to him. They had dinner with him, during the course of which he offered them cigarettes which he stated contained heroin, which they declined. They then engaged in conversation with him respecting the heroin which they had on board the vessel, and finally arranged to sell him two packages of heroin which they agreed to deliver to his apartment the following evening. He suggested that they make delivery prior to 9:00 P.M. inasmuch as he expected to leave the apartment at that time.

Between 7:00 and 8:00 P.M. on February 2nd Customs Agent Malony, on duty in uniform at a fixed station at the exit to Pier 11, Atlantic Basin, in Brooklyn,

New York, observed the defendants Vasquez and Mendoza leaving the pier. They appeared nervous, and "kept looking around quite a bit." He stopped them, identified himself as a Customs Agent, pointed to his badge, and directed them to step into the gateman's shack, where an inspection of their persons indicated that each of them had, attached to his belt, two packages which, upon examination, were found to contain heroin hydrochloride. They were placed under arrest and taken to the United States Customs Headquarters at 201 Varick Street, in the Borough of Manhattan, where they were questioned.

Customs Agent Flynn, who participated in the questioning, testified that Vasquez informed him of the instructions which he had received from the unnamed person at Hong Kong and the incidents involved in the visit which he and Mendoza had made to the Noon Fong apartment on February 3rd, as hereinabove stated.

At about midnight on February 2nd several of the Agents accompanied Vasquez and Mendoza to the Noon Fong apartment in an effort to effect the delivery of the heroin, but found that he was not at home. At about 8:00 P.M. on February 3rd a number of Customs Agents again visited 19½ Pitt Street with Vasquez and Mendoza. A portable transmitter was placed on the person of Mendoza, and Vasquez was supplied with a paper bag containing two packages of the heroin taken from him at the pier on February 2nd. Vasquez or Mendoza knocked on the door of apartment No. 10 and they were admitted. Flynn was in an adjacent apartment at the time. He was equipped with a portable radio receiver. Agent Ellis was assigned to monitor the conversation which was expected to ensue between Vasquez, Mendoza and the occupant of the apartment. After a brief period Flynn heard a voice which he recognized as that of Mendoza, asking "How do you open the door." Immediately thereafter the door was opened by Noon Fong and he, Vasquez and Mendoza appeared in the doorway.

Several agents were standing in the hallway at the time, just outside of the entrance to the apartment. One of them stated that those at the door were Government Agents, and that Noon Fong was under arrest. They thereupon entered the apartment, made a search thereof, and found and seized a quantity of heroin hydrochloride and a number of cigarettes containing heroin, as well as a sum of money which Noon Fong had in the pocket of his bathrobe.

Section 7607 of Title 26, United States Code, authorizes officers of the customs to make arrests without warrant for violation of any law of the United States relating to narcotic drugs, where the violation is committed in the presence of the person making the arrest, or where such person has *reasonable ground to believe* that the person to be arrested has committed or is committing such violation.

 Counsel for Noon Fong argues that Section 7607 was not intended to relieve the arresting officer of the obligation to seek either a search warrant or a warrant for his arrest, and that there was ample time for the agents to procure the same, since the facts known to them on February 3rd were also known to them on February 2nd. That contention is without merit. In the first place, if Congress, in enacting Section 7607, had intended to impose limitations on or exceptions to the power and authority authorized thereunder, it would have expressly provided therefor. On the contrary, the legislative history and purpose of the Act indicate that it was designed to assist narcotics and customs officers in solving and overcoming the many difficult problems peculiar to the traffic in narcotics and smuggling. Secondly, the Customs Agents did not have sufficient information or evidence to support an application for a search warrant until the drugs in question came into the possession of Noon Fong, and that was not until a few minutes before his arrest on February 3rd.

The Fourth Amendment of the Constitution of the United States provides, in

pertinent part, that the right of the people to be secure in their persons, houses, papers and effects against *unreasonable* searches and seizures shall not be violated and no warrants shall issue, but upon *probable cause.*

In the case of Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 331, 3 L.Ed.2d 327, likewise involving an arrest, search and seizure without warrants, the Court said: "The crucial question for us then is whether knowledge of the related facts and circumstances gave Marsh 'probable cause' within the meaning of the Fourth Amendment, and 'reasonable grounds' within the meaning of § 104(a), supra,[1] (Section 7607 of Title 26, U.S.Code) to believe that petitioner had committed or was committing a violation of the narcotic laws. If it did, the arrest, though without a warrant, was lawful and the subsequent search of petitioner's person and the seizure of the found heroin were validly made incident to a lawful arrest, and therefore the motion to suppress was properly overruled and the heroin was competently received in evidence at the trial." (Matter in parenthesis added.)

Here there was ample information and evidence to give the Customs Agents probable cause and reasonable grounds for the arrest of Noon Fong, and the ensuing search and seizure were permissible under Draper v. United States, supra. See also Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652; Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543; Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145; United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653; and Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503.

Noon Fong's counsel contends that much of the information obtained by the agents was "hearsay" and not legally competent, and should not be con-

sidered in determining the motion to suppress. Here again, the position of the defendant is untenable, for that very point was urged and passed upon in Draper v. United States, supra. The Court said, 358 U.S. at page 311, 79 S. Ct. at page 332, that the petitioner "contends (1) that the information given by Hereford to Marsh was 'hearsay' and, because hearsay is not legally competent evidence in a criminal trial, could not legally have been considered, but should have been put out of mind, by Marsh in assessing whether he had 'probable cause' and 'reasonable grounds' to arrest petitioner without a warrant * * * Considering the first contention, we find petitioner entirely in error. Brinegar v. United States, 338 U.S. 160, 172–173, 69 S.Ct. 1302, 1309, 93 L.Ed. 1879, has settled the question the other way. There, in a similar situation, the convict contended 'that the factors relating to inadmissibility of the evidence [for] *purposes of proving guilt at the trial,* deprive[d] the evidence as a whole of sufficiency to show probable cause for the search * * *.' Id., 338 U.S. 172, 69 S.Ct. 1309. (Emphasis added.) But this Court, rejecting that contention, said: '[T]he so-called distinction places a wholly unwarranted emphasis upon the criterion of admissibility in evidence, to prove the accused's guilt, of the facts relied upon to show probable cause. That emphasis, we think, goes much too far in confusing and disregarding the difference between what is required to prove guilt in a criminal case and what is required to show probable cause for arrest or search.'"

This Court does not appear to have jurisdiction under Rule 41(e), supra, to entertain the application for the return of the money taken from the Noon Fong apartment.

Accordingly, the defendant Noon Fong's motion is in all respects denied.

Settle order on notice.

---

1. The terms 'probable cause' as used in the Fourth Amendment and 'reasonable grounds' as used in § 104(a) of the Narcotic Control Act, 70 Stat. 570, are substantial equivalents of the same meaning. United States v. Walker, 7 Cir., 246 F.2d 519, 526; cf. United States v. Bianco, 3 Cir., 189 F.2d 716, 720.