503 P.2d 398

**STATE of Arizona, Appellee,**

**v.**

**Virgil LeRoy AIKINS, Appellant.**

**No. I CA–CR 416.**

Court of Appeals of Arizona,
Division 1,
Department B.

Nov. 28, 1972.

Rehearing Denied Dec. 26, 1972.

Review Denied Jan. 23, 1973.

--- ✦ ---

Gary K. Nelson, Atty. Gen., by William P. Dixon, Asst. Atty. Gen., Phoenix, for appellee.

Flynn, Kimerer, Thinnes & Galbraith, by Thomas A. Thinnes, Phoenix, for appellant.

JACOBSON, Judge.

In this appeal from the judgments of conviction and sentences for possession of cocaine and heroin, the defendant questions the search for and the seizure of the narcotics in question based upon an informant's tip.

The defendant, Virgil LeRoy Aikins, was formally charged in Yavapai County Superior Court with possession and possession for sale of cocaine and heroin and the transportation of cocaine and heroin. A writ of habeas corpus and a pretrial motion to suppress evidence were presented to the trial court and denied. At the time of trial the possession for sale charges and the transportation charge were dismissed and the remaining count was presented to the trial court on the basis of the transcript of the preliminary hearing, the writ of habeas corpus hearing and the motion to suppress hearing. No additional evidence was presented. On April 12, 1971, the defendant was found guilty of possession of cocaine and heroin and was sentenced to six to eight years on each possession charge, the sentences to commence upon defendant's release from the Federal penitentiary where he was serving time on another conviction.

On appeal, defendant presents the following questions:

(1) Was the warrantless arrest of defendant valid;

(2) If the defendant's arrest was valid, was the subsequent warrantless search of his automobile so remote in time as to be invalid and to constitute a violation of defendant's constitutional rights.

The defendant also raised and argued in his briefs before this court the question of whether the trial court's original sentence which was made to run consecutive with a previously imposed Federal jail sentence was valid. However, during the pendency of this appeal and upon motion to revest the trial court with jurisdiction to modify the defendant's sentence, this court granted this motion. The trial court's modified sentence suspended imposition of sentence for a period of eight years upon conditions. It thus appears that the consecutive nature of the sentence complained of by the defendant has been deleted by the modified sentence imposed and this issue is now moot.

The facts giving rise to these questions are as follows. On September 27, 1970, at approximately 11:30 a. m., Officer Long of the Phoenix Police Department received a telephone call from a confidential informant that the defendant and his wife were going to transport a large amount of narcotics from Phoenix, Arizona, to Las Vegas, Nevada. The informant was uncertain as to exactly when the trip was to be made or the mode of transportation, however, he thought that the defendant and his wife would be driving a 1965 Buick automobile and supplied Officer Long with the license number of this vehicle. Officer Long immediately ordered a surveillance of the defendant's residence which commenced at approximately 12:30 p. m. that same afternoon. Officer Long testified that prior to this tip involving the defendant, he had received other information from this same informant involving the narcotics traffic in and around Phoenix, Arizona, and based upon this information

had made several narcotic arrests. While the prior information did not specifically involve this defendant, Officer Long had received information from other law enforcement officers that the defendant was a known trafficker in narcotics. On appeal, the defendant does not question that the informant was reliable.

Following the ordering of the surveillance, Officer Long again talked to his informant who advised him that the basis of his information was that on numerous occasions prior to the tip the informant had purchased narcotics from the defendant and that he had last purchased narcotics from the defendant within 48 hours of his telephone call.

Officer Jonovich, who was conducting the surveillance at the defendant's residence, testified that he had observed the defendant at his home for approximately six and one-half hours during which time the defendant appeared to be working on his 1965 Buick, that the defendant left the residence on two occasions driving the Buick and was followed on these occasions and in general kept the residence, the defendant, and particularly the 1965 Buick under surveillance. Five officers were involved in this surveillance procedure.

At approximately 7:30 p. m. on the evening of September 27, 1970, the defendant was observed loading the 1965 Buick with clothing as if preparing for a trip. The defendant, his wife and small child then entered the 1965 Buick in question and drove to a service station where gasoline was obtained. The vehicle left the service station and proceeded north on Black Canyon Freeway where the following officers lost contact with the Buick.

After contact was lost, the officers proceeded to Wickenburg, Arizona, where Agent Joseph of the Department of Public Safety issued, at approximately 9:00 p. m., an all-points bulletin requesting that defendant's vehicle and occupants be detained. These officers then proceeded to Kingman, Arizona.

At approximately 10:00 p. m., a special deputy of the Yavapai County Sheriff's office, stationed at Ash Fork, Arizona, received through police channels, a description and license number of the Buick in question. At approximately 1:00 a. m. upon September 28, 1970, the defendant and the 1965 Buick were located at a service station in Ash Fork. At approximately 1:20 a. m. on that date, the special deputy and a regular deputy of the Yavapai County Sheriff's office arrived at the service station and advised the defendant of the detention request and requested that the defendant remain at the station until the matter was straightened out. After making several telephone calls to Prescott and Flagstaff, the special deputy formally placed the defendant under arrest at approximately 1:35 a. m., handcuffed him and placed him in a sheriff's vehicle. The defendant's automobile was removed from in front of the gasoline pumps to a location beside the service station, locked, and the key retained by the Deputy Sheriff.

The arrest scene remained in this condition until about 3:00 a. m., when officers Long, Jonovich and Joseph arrived in Ash Fork. Officer Jonovich requested permission to search the vehicle, and the defendant refused. Thereupon, a warrantless search of the vehicle was commenced which resulted in the discovery of the contraband in issue.

The defendant's first contention is that no probable cause existed for the defendant's arrest in Ash Fork and hence any subsequent search of his vehicle was unlawful as not being supportable as a search incidental to a lawful arrest. This contention is bottomed on the argument that the confidential informant failed to supply to the officers sufficient underlying circumstances on which he formed his conclusion that the defendant was in possession of or illegally transporting narcotics as required by Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

■ There is no question that an arrest without a warrant not made during the commission of a crime must be based upon probable cause that a crime has been committed and that the arrested person committed that crime. Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); State v. Williams, 104 Ariz. 319, 452 P.2d 112 (1969); A.R.S. § 13–1403 (1972). This probable cause may be supplied by a reliable informant when there is supplied a factual basis for his information showing the informant's knowledge. Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964); Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). In addition, the underlying circumstances which are supplied by the informant may be bolstered and verified by the personal observations of the officers involved. State v. Washington, 17 Ariz.App. 207, 496 P.2d 633 (1972); Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).

■ Applying these principles to the situation presented here, we are drawn to the conclusion that probable cause existed for defendant's arrest. The informant in this case based his knowledge of the possession of narcotics by the defendant upon the fact that within 48 hours prior to the tip he passed on to law enforcement officials, he had personally purchased narcotics from the defendant. Given the admitted reliability of the informant, this information standing alone would have formed a sufficient underlying factual basis for the officers to have arrested the defendant with probable cause at his residence on the afternoon of September 27, 1970, for possession of narcotics. In fact, at time of oral argument, counsel for the defendant conceded that at this point in time such probable cause existed for arrest for possession. He argues, however, that the portion of the tip dealing with transporting the contraband from Phoenix to Las Vegas was unsupportable with underlying facts and thus his arrest in Ash Fork was without probable cause. This argment overlooks the personal observations of the surveil-

lance officers in seeing the fingered vehicle being loaded by the defendant with clothing as if going on a trip, the defendant, his wife and child getting into the automobile, the taking of that automobile to a gasoline station and filling it with gas as if preparatory for making a trip, and then taking a route which would lead away from Phoenix in the general direction of Las Vegas, Nevada. At this point, we are of the opinion that the personal observations of the activities of the defendant by the surveillance officers coupled with the knowledge of the informant that he had purchased narcotics from the defendant within 48 hours, sufficiently verified the informant's tip as to give the officers probable cause to believe that the defendant was in the process of transporting illegal narcotics. Therefore, probable cause for arrest existed. *See* Draper v. United States, *supra*.

■ The defendant next contends that even if probable cause to arrest existed, a warrantless search of defendant's vehicle cannot be sustained as a search incidental to a lawful arrest because of the passage of two hours time between the arrest and the search during which time the defendant was already in custody and the vehicle had been rendered immobile by locking it and the officers keeping the key. Again, this argument overlooks the rationale of the U. S. Supreme Court in Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L. Ed.2d 419 (1970), and we quote:

"Arguably, because of the preference for a magistrate's judgment, only the immobilization of the car should be permitted until a search warrant is obtained; arguably, only the 'lesser' intrusion is permissible until the magistrate authorizes the 'greater.' But which is the 'greater' and which the 'lesser' intrusion is itself a debatable question and the answer may depend on a variety of circumstances. For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a

magistrate, and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment." 399 U.S. at 51, 52, 90 S.Ct. at 1981.

We therefore hold that the search of the defendant's vehicle in this case was not unreasonable under the Fourth Amendment to the United States Constitution.

For the foregoing reasons, the judgment of conviction is affirmed.

HAIRE, C. J., Division 1, and EUBANK, J., concur.