505 P.2d 263

**STATE of Arizona, Appellee,**
v.
**James HUTTON, Appellant.**
**No. 1 CA–CR 467.**

Court of Appeals of Arizona,
Division 1,
Department B.

Jan. 18, 1973.

Rehearing Denied Feb. 16,1973.

Review Granted March 13, 1973.

Gary K. Nelson, Atty. Gen., by Peter M. Van Orman, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender, by William C. Blakley, Phoenix, for appellant.

JACOBSON, Chief Judge, Division 1.

In this appeal the defendant James Hutton questions the search for, and subsequent seizure of, heroin which resulted in his being tried, convicted, and sentenced to not less than two nor more than ten years in the Arizona State Prison for possession of heroin. A.R.S. § 36–1002 (1961).

At approximately 11:00 p. m. on the evening of August 12, 1970, Officer Thomas Jonovich of the Narcotics Division of the Phoenix Police Department received at his home a telephone call from a confidential informant that the defendant was possessing and selling heroin "somewhere in Southwest Phoenix," and that the informant had personally observed this activity within 24 hours prior to the call. The informant specified a location at which this activity was taking place, but Officer Jonovich was excused from testifying as to this location because it might disclose the identity of the informant. The informant also advised Officer Jonovich that the defendant had just left this particular location.

Although the caller identified the defendant only as "Shot," Officer Jonovich knew that "Shot" referred to the defendant, the officer having had previous contact with the defendant including participation in the execution of a search warrant on a motel room being rented by the defendant less than a month before.

The next day at noon Officer Jonovich and three other officers went to Top's Tavern, located in Southwest Phoenix, a place with which the officers were familiar as a meeting place for narcotics addicts and "junkies." A reasonable inference to be drawn from the evidence is that Top's Tavern was the location previously given by the informant. The officers parked their vehicle on the west side of Top's Tavern, and as Officer Jonovich, not in uniform, approached the front, he made eye contact with the defendant who was standing next to the doorway on the sidewalk in front of Top's Tavern.

When the defendant saw Officer Jonovich, he "appeared to be very shaken and upset. He had a panicked look on his face, and turned his body in an eastwardly direction while ducking his head and placing his hand by the side of his face, and began to walk eastbound on the sidewalk away from the front of Top's."[1] Officer Jonovich approached the defendant, identified himself by badge and orally as a police officer, though the defendant knew Officer Jonovich as such, and advised defendant that he had information that the defendant was "in possession of heroin."

---

1. Officer Jonovich also testified at the preliminary hearing that, "When I came around the corner, Mr. Hutton looked at me, and he seemed to be very shakey. He had a panicked look on his face and ducked his head and his shoulder in a manner like away from me eastward. He was facing north." This testimony was similar to that given by the officer at the hearing on the motion to suppress evidence.

Officer Jonovich directed the defendant to place his hands on top of an automobile and advised him of his rights prior to searching the defendant and seizing six multi-colored small, hand-knotted, and wrapped balloons contained inside a cigarette package from the pockets of defendant's shirt. Officer Jonovich returned with these items to the police vehicle where he conducted a field test for opiates on the contents of one of the little balloons. The test proved positive. Thereafter, Officer Jonovich informed the defendant that he was under arrest.

The defendant entered the criminal process with the results hereinabove mentioned.

On appeal the defendant challenges the validity of the warrantless search of his person as being violative of the rights guaranteed under both the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. He assigns reversible error to the trial court's denial of his motion to suppress the allegedly illegally seized evidence. The State contends, however, that the search was incidental to a lawful arrest, and therefore, constitutionally permissible.

■ Whether defendant's arrest was constitutionally valid depends upon whether at the time of the arrest, "the officers had probable cause to make it." Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142, 145 (1964); State v. Enriquez, 106 Ariz. 304, 475 P.2d 486 (1970); State v. Pederson, 102 Ariz. 60, 424 P.2d 810, cert. denied, 389 U.S. 867, 88 S.Ct. 138, 19 L.Ed.2d 142 (1967). This requirement is codified in A.R.S. § 13–1403, subsec. 1 (1972) as follows:

"A peace officer may, without a warrant, arrest a person:

"1. When he has probable cause to believe that a felony has been committed and probable cause to believe the person to be arrested has committed the felony."

■ Probable cause exists "where 'the facts and circumstances within their [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." Draper v. United States, 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327, 332 (1959); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); State v. Pederson, *supra*; State v. Pine, 8 Ariz. App. 430, 446 P.2d 940 (1968), cert. denied, 395 U.S. 962, 89 S.Ct. 2103, 23 L.Ed.2d 747 (1969).

■ In our opinion, the defendant was put under arrest when he was taken into custody by being directed to place his hands on top of a nearby vehicle and was searched, and not when he was formally informed that he was under arrest after the narcotics were seized and tested. Swetnam v. F. W. Woolworth Company, 83 Ariz. 189, 318 P.2d 364 (1957); *see*, State v. Vaughn, 12 Ariz.App. 442, 471 P. 2d 744 (1970), and State v. DeRoss, 9 Ariz.App. 497, 454 P.2d 167 (1969).

The State contends that probable cause existed based upon the informant's tip that the defendant was dealing in heroin "somewhere in Southwest Phoenix," the furtive gestures of the defendant upon seeing the four police officers approaching him, the reputation of the defendant as a dealer in narcotics, and upon the reputation of the locale at which he was arrested. These elements shall be examined in light of court decisions dealing with the issue of probable cause.

■ There is no doubt that probable cause for an arrest may be supplied by an informant, provided that it is shown that the informant is reliable, and that he supplies sufficient underlying circumstances showing the basis of his information. Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). The second element of this so-called "two-prong test" was clearly met by the evidence that the informant had personally observed the defendant selling heroin within 24 hours prior to

his call. The first element—reliability—is somewhat more difficult, being premised solely upon the informant's supplying information leading to only one previous successful arrest. In our opinion, however, the number of previous tips is only one element going to the issue of credibility, the ultimate test being whether the informant is trustworthy and capable of belief. This trustworthiness is to be determined from all the elements normally associated with proof of credibility. *See*, McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed. 2d 62 (1967). In this case, as previously indicated, the only evidence presented on this issue of credibility was the one prior tip leading to a successful arrest. This is evidence going to the trustworthiness and credibility of this particular informant and would appear to raise the informant above the level of a mere gossipmonger which was condemned by Spinelli v. United States, *supra*. We, therefore, hold there was sufficient evidence of the informant's trustworthiness to pass the *Aguilar* and *Spinelli* test.

We thus hold that on the evening of August 12, 1970, when Officer Jonovich received a telephone call from the reliable, confidential informant who supplied him with the underlying facts indicating the informant's knowledge, Officer Jonovich had probable cause to believe a crime had been committed, namely, selling heroin, and that the defendant had committed it. Under all of the decisions, these circumstances gave rise to probable cause to arrest the defendant. State v. White, 13 Ariz.App. 265, 475 P.2d 750 (1970); State v. Snyder, 12 Ariz.App. 142, 468 P.2d 593 (1970), cert. denied, 400 U.S. 1001, 91 S.Ct. 475, 27 L. Ed.2d 452 (1971). It is important at this point to make clear that this probable cause for arrest of the defendant for the crime of selling heroin became fixed in time and represented a static condition, that is, that probable cause existed to believe the crime of selling heroin had been committed by the defendant. The mere passage of time could not and does not alter this static condition. This is to be con-

trasted with the probable cause that is necessary in order to obtain the evidence of that crime, in this case the heroin itself. One of the elements which must be shown before a magistrate may issue a search warrant is that there is probable cause to believe that the contraband is in the location for which the search warrant is requested. U.S.Const. Amend. IV. The factor of location is, of course, affected by the passage of time. Where an informant's tip reveals that contraband is at a particular location at a certain point in time, the likelihood that such contraband will remain at that location diminishes with the passage of time. Time and its passage is thus a relevant element in determining whether probable cause exists for the issuance of a search warrant. This is particularly true where the evidence sought to be seized is on the person of a mobile individual rather than in an immobile structure or location. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); United States v. Vigil, 448 F. 2d 1250 (9th Cir. 1971); State v. Aikins, 18 Ariz.App. 440, 503 P.2d 398 (1972).

Applying this analysis to the facts in this case, it is apparent that when Officer Jonovich arrested the defendant on the afternoon of August 13, 1970, some 14 hours after the informant's tip giving rise to the probable cause for the arrest, such probable cause to believe that the defendant committed the crime still existed. The subsequent search of the defendant incidental to that arrest, assuming the arrest was not invalid for other reasons, was constitutionally permissible, and the evidence revealed by that search was admissible.

Under this state of facts we need not determine whether the defendant's gestures at the arrest scene supplied additional probable cause for his arrest. *See*, Anno., Search and Seizure—Furtive Gesture, 45 A.L.R.3d 581 (1972).

The only other grounds urged for invalidating the arrest was the failure of Officer Jonovich to obtain a warrant of arrest for the defendant, he allegedly hav-

ing had the opportunity to do so prior to the arrest. The only case we have found dealing with the failure to obtain a warrant of arrest for a felony is *United States v. Vasquez*, 183 F.Supp. 190 (E.D.N.Y. 1960), which held that the passage of 24 hours between the time the information was received and the subsequent arrest was not unreasonable under the Fourth Amendment of the United States Constitution. *Cf.*, *United States v. Squella-Avendano*, 447 F.2d 575 (5th Cir. 1971), cert. denied, 404 U.S. 985, 92 S.Ct. 450, 30 L.Ed.2d 369 (1971). Under the facts of this case, we are not convinced that the failure of Officer Jonovich to obtain a warrant for defendant's arrest prior to going to Top's Tavern was unreasonable.

Judgment of conviction and sentence affirmed.

EUBANK, P. J., and HAIRE, J., concur.