566 P.2d 678

STATE of Arizona, Appellee,

v.

Essie Mae LEWIS, Appellant.

No. 3637.

Supreme Court of Arizona,
In Banc.

June 9, 1977.

Bruce E. Babbitt, Atty. Gen. by William J. Schafer III, Chief Counsel, Lynn Hamilton, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Rudy J. Gerber, Deputy Public Defender, Phoenix, for appellant.

STRUCKMEYER, Vice Chief Justice.

Appellant, Essie Mae Lewis, was convicted of possession of heroin in violation of A.R.S. § 36–1002. She appeals, asserting that the trial court erroneously denied her motion to suppress a balloon of heroin.

On November 29, 1974, the Phoenix police obtained a warrant to search Don and Carol Meacham and their residence at 201½ West Broadway in Phoenix. After serving the warrant, the police talked with Clarence Mitchell, who was present at the Meacham residence. He told the police that they should have waited:

"because there was a black chick that just went out to score and she'd be back shortly and she'd be holding."

About twenty minutes after the warrant was served, the appellant, a black woman, opened the front door of the residence and entered. Police Officer Hogue took her by the arm and led her into the living room and started to question her. Appellant was nervous, evasive with her answers, and talked with her teeth clenched. At that point, Officer Hogue told her to open her

mouth. She refused and started a swallowing movement. One officer applied a chokehold to her in order to prevent her from swallowing. Another officer slapped her on the back to get her to open her mouth. After a struggle of a minute or two, a balloon was extracted from her mouth, which, after testing, was determined to contain heroin.

Appellant argues that the forcible taking of the balloon from her mouth constituted an illegal search in that the warrant only authorized the search of Carol and Don Meacham and, further, that the force used to obtain the heroin was grossly excessive.

■■■ It is true, as the appellant claims, that she was not named in the search warrant and, moreover, she was not present when the search warrant was served. It is also true that a visitor to the scene of a lawful search is not subject to a search warrant. Probable cause for the issuance of a search warrant exists only where the facts presented to a magistrate are based on personal knowledge or trustworthy information sufficient to warrant a man of reasonable caution to believe that seizable items are located on the premises or persons sought to be searched. See, e. g., State v. Maddasion, 24 Ariz.App. 492, 539 P.2d 966 (1975). A person incidentally on the premises and not named in the warrant would not be within the facts considered by the magistrate when the warrant was issued. See People v. Lujan, 174 Colo. 554, 484 P.2d 1238 (1971); State v. Nabarro, 55 Haw. 583, 525 P.2d 573 (1974); Commonwealth v. Platou, 455 Pa. 258, 312 A.2d 29 (1973), cert. denied, 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974). To hold otherwise would authorize a general warrant by which large numbers of persons could be searched without naming them and would be an unreasonable search under the Constitution of the United States. See Crossland v. State, 266 P.2d 649 (Okl.Cr.1954); Saunders v. State, 199 Md. 568, 87 A.2d 618 (1952).

■■■ The State, however, relies on A.R.S. § 13–1446(E)(2). It provides:

"A peace officer executing a search warrant directing a search of premises or a vehicle may search any person therein if:

\* \* \* \* \* \*

2. It reasonably appears that property or items enumerated in the search warrant may be concealed upon the person."

We can see no reason why the statute should not apply to those persons who arrive while the warrant is being executed as well as those who are present when the search is commenced. No real distinction should be made between the two. See Johnson v. State, 440 S.W.2d 308 (Tex.Cr. App.1969). Heroin was listed in the search warrant as an item to be seized. The police officers acted on the information of Mitchell and their personal observations of appellant. The standard of reasonableness found in § 13–1446(E)(2) should be based on the same quality of information as that needed to find probable cause for arrests and the issuance of search warrants. See Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); State v. Pederson, 102 Ariz. 60, 424 P.2d 810, cert. denied, 389 U.S. 867, 88 S.Ct. 138, 19 L.Ed.2d 142 (1967); United States v. Henry, 259 F.2d 725 (7th Cir. 1958), rev'd on other grounds, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); State v. Cottrell, 12 Wash.App. 640, 532 P.2d 644, rev'd on other grounds, 86 Wash.2d 130, 542 P.2d 771 (1975).

■■■ Justification for the search of appellant arises out of the information given by Mitchell that a "black chick" would soon be back and would be "holding" drugs. But information sufficient to constitute probable cause must come from reasonably trustworthy sources. State v. Edwards, 111 Ariz. 357, 529 P.2d 1174 (1974). Since the information was possibly incriminatory, Mitchell's credibility and reliability were strengthened. See United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). Also where information from a reliable source is verified by observation, probable cause is established. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); State v. Aikins, 18 Ariz.App. 440, 503 P.2d 398 (1972). The actions of

appellant in speaking with her teeth clenched and in swallowing when asked to open her mouth, together with the tip from Mitchell, gave the officers probable cause to believe that appellant had drugs in her mouth. We conclude the police were authorized to search appellant pursuant to the statute, § 13–1446(E)(2).

 Moreover, a warrantless search is justified where exigent circumstances exist. Thus, when there are reasonable grounds to believe that imminent destruction of material subject to seizure is threatened, search without a warrant is not precluded by the Fourth Amendment. *United States v. Blake*, 484 F.2d 50 (8th Cir. 1973), *cert. denied*, 417 U.S. 949, 94 S.Ct. 3076, 41 L.Ed.2d 669 (1974); *Cipres v. United States*, 343 F.2d 95 (9th Cir. 1965), *cert. denied*, 385 U.S. 826, 87 S.Ct. 58, 17 L.Ed.2d 62 (1966); *State v. Hutton*, 108 Ariz. 504, 502 P.2d 1323 (1972); *People v. Gaines*, 265 Cal. App.2d 642, 71 Cal.Rptr. 468 (1968), *cert. denied*, 394 U.S. 935, 89 S.Ct. 1212, 22 L.Ed.2d 467 (1969). In the instant case, there was probable cause for the police to believe the appellant was disposing of drugs. The exigent circumstances necessary to justify a search existed.

Appellant argues that even if the search was legal, the force used in executing the search was so grossly excessive that it was a violation of due process.

In *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), the police broke into Rochin's house illegally and when he swallowed some pills, they took him to the hospital and forced an emetic solution into his stomach through a tube. This caused the defendant to regurgitate the pills. The United States Supreme Court held that:

"the proceedings by which this conviction was obtained do more than offend some fastidious squeamishness or private sentimentalism about combatting crime too energetically. This is conduct that shocks the conscience." *Id.* at 172, 72 S.Ct. at 209, 96 L.Ed. at 190.

It also described the police methods as: "too close to the rack and the screw to permit of constitutional differentiation." *Id.* at 172, 72 S.Ct. at 210, 96 L.Ed. at 190.

In *Breithaupt v. Abram*, 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957), the Court in holding that a blood test was permissible under *Rochin*, commented that due process is measured:

"by that whole community sense of 'decency and fairness' that has been woven by common experience into the fabric of acceptable conduct." *Id.* at 436, 77 S.Ct. at 410, 1 L.Ed.2d at 451.

In *United States v. Janis*, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976), the Court cited *Rochin* as holding that:

"means used by a State to procure evidence could be sufficiently offensive to the concept of ordered liberty as to make admission of the evidence so procured a violation of the Due Process Clause." *Id.* at 444, 96 S.Ct. at 3027, 49 L.Ed.2d at 1055.

See also, *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); *United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973).

 If a defendant resists a reasonable search, the police may respond with appropriate force. *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). The difficulty, of course, lies in differentiating between conduct in which appropriate force counters resistance to a reasonable search and conduct that is condemned by the Due Process Clause.

 In the present case, the police sought only to prevent the appellant from swallowing balloons of heroin. It does not appear that more force was used than reasonably necessary to prevent the deliberate destruction of evidence. Nor was the means by which force was inflicted such as to shock the conscience of this Court. While there is precedent to the contrary, the weight of authority has arrived at a similar conclusion. *United States v. Harrison*, 139 U.S.App.D.C. 266, 432 F.2d 1328 (1970); *State v. Santos*, 101 N.J.Super. 98, 243 A.2d 274 (1968); *State v. Young*, 15 Wash.App. 581, 550 P.2d 689 (1976); *see*

*Foxall v. State,* 157 Ind.App. 19, 298 N.E.2d 470 (1973). *Contra, People v. Sanders,* 268 Cal.App.2d 802, 74 Cal.Rptr. 350 (1969); *see Alesi v. Craven,* 446 F.2d 742 (9th Cir. 1971).

The judgment of the court below is affirmed.

HAYS, J., concurs.

HOLOHAN, Justice, concurring:

I concur in the result.

GORDON, Justice (dissenting):

Although I agree that probable cause existed for the arrest of appellant, her search can be justified only if done pursuant to a warrant, or as a search incident to a lawful arrest.

In my view, A.R.S. § 13–1446(E)(2) (Supp. 1973) (quoted in the majority opinion of this Court) cannot eliminate constitutional standards: "reasonable cause" must mean "probable cause", and even if probable cause exists to arrest the scope of the search incident to that arrest is limited to the exterior portions of the accused's body, or that area near enough to him to be within his control, so that weapons may be taken which the accused might use to effect an escape, or evidence taken which might be seized and destroyed by the accused. *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). A search incident to arrest that goes beyond this scope in breadth or intensity without a warrant or other judicial intervention should be closely scrutinized on a case by case basis for constitutional validity.

Under *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), searches involving intrusions beyond the body's surface require (1) clear indication the evidence sought will be found, and (2) a warrant. The warrant requirement has been waived, as it was in *Schmerber,* when exigent circumstances exist. Circumstances are exigent when, for example, evidence which would naturally diminish is sought, such as blood alcohol level.

Although no one has a right to destroy evidence, the facts in this case do not warrant an assumption that appellant's swallowing of the balloons of heroin would cause this result. Had the facts indicated that the officers were unsure of how the heroin was contained (whether in paper or tin foil as opposed to balloons which if properly tied will not discharge their contents into the digestive system), I would agree with the majority. But here the facts given show that the officers knew from ample experience that heroin which appellant was trying to conceal by swallowing was contained in balloons. Balloons normally would pass through the digestive system with their contents intact, without ill effect.

Under these circumstances, a warrant should have been sought. Such warrant would authorize a search of the interior portion of appellant's body. Alternatively, appellant could have been given a choice, by judicial order, between the monitoring of her body wastes for a period of a day or two or accepting the imposition of a medically supervised procedure wherein the evidence would be removed from her body by the use of emetics. Applying a choke hold and the accompanying struggle and beating of appellant to force her to cough up the balloons, which process, according to the evidence went from a standing position of the three parties to a lying down position on a couch, and thereafter on the floor, and which lasted between thirty seconds and two minutes, constituted in my opinion an unacceptable alternative to a further more specific warrant or court order.

The alternative I suggest would preserve the expectation of privacy that one should have of the inner portions of his or her body. The body, like the home, cannot be invaded by officers, absent the most compelling circumstances, without a warrant authorizing them to do so. The alternative I suggest would also render unnecessary the agonizing process of reconciling police conduct with the United States' Supreme Court's statement that "[i]t would be a stultification of the responsibility which the course of constitutional history has cast upon this Court to hold that in order to

convict a man the police cannot extract by force what is in his mind but can extract what is in his stomach." *Rochin v. California,* 342 U.S. 165 at 173, 72 S.Ct. 205 at 210, 96 L.Ed. 183 (1952).

Under these particular facts, and not others which are presently not before us, I would exclude the evidence obtained because the conduct of the police violated appellant's rights guaranteed by the Fourth Amendment of the United States Constitution as well as by Art. 2, § 8 of the Constitution of Arizona. See *Rochin v. California, supra; People v. Bracamonte,* 15 Cal.3d 394, 124 Cal.Rptr. 528, 540 P.2d 624 (1975).

I must, therefore, respectfully dissent.

CAMERON, C. J., concurs.