**Robert JONES, Appellant,**

v.

**UNITED STATES, Appellee.**

**Nos. 90–CF–447, 91–CO–1512.**

District of Columbia Court of Appeals.

Submitted Jan. 19, 1993.
Decided Feb. 12, 1993.

---

**250**

David Rosenthal, appointed by this court, for appellant.

Elizabeth H. Danello, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher, Thomas J. Tourish, Jr., and Randall D. Eliason, Asst. U.S. Attys., were on the brief, for appellee.

Before FERREN, FARRELL, and KING *, Associate Judges.

FERREN, Associate Judge:

A jury convicted appellant Robert Jones, Jr., of possession of heroin with intent to distribute. *See* D.C.Code § 33–541(a)(1) (1988 Repl.). The trial court sentenced him to five to fifteen years of imprisonment, with a mandatory minimum of four years. Appellant contends on appeal that the trial court committed reversible error when it gave an "acquittal first" instruction after the jury had announced it was deadlocked. After filing his notice of appeal, appellant also moved to vacate his sentence and conviction under D.C.Code § 23–110 (1989 Repl.), alleging ineffective assistance of counsel. The trial court denied this motion. Appellant's challenge to this ruling was consolidated with his appeal. We affirm.

## I.

According to the government's evidence, an undercover police team observed appellant in an alley between two abandoned buildings frequented by heroin addicts. Two officers saw appellant give a ziplock bag filled with white powder to an unknown person in exchange for U.S. currency. The bag was part of a larger bundle held by appellant. The two officers were about twelve to fifteen feet away at the time. When the officers began to approach, a third man in the alley warned appellant and took the money appellant had just received. The third man refused, however, to take the bundle when appellant tried to hand it to him. All three men then tried to flee. The police officers concentrated on stopping appellant. Once they had done so, the officers identified themselves. Appellant then popped the bundle into his mouth. The officers struggled with appellant to recover the bundle and one of them used the Heimlich maneuver to force appellant to spit it out. Appellant did so; the police recovered the bundle. The bundle contained ten packets of white pow-

---

* Associate Judge KING joins the opinion of the court except for Part II., in which he concurs in the result only.

der, later analyzed as 1.695 grams of heroin at twelve per cent strength. Appellant did not testify.

## II.

■ Before instructing the jury on the lesser included offense of simple possession of a controlled substance, the trial judge gave the jury the so-called "acquittal first" instruction:

> If you find that the Government has not proven each of the elements of that offense [possession with intent to distribute] beyond a reasonable doubt, you must find the defendant not guilty of that charge and then and only then should you consider the lesser charge of simple possession.

Defense counsel did not object to this instruction.

The jury left the courtroom to begin deliberating at 11:25 a.m. At 3:14 p.m., the court received a note in which the jury said that it had been "unable to reach a unanimous decision on either charge." Noting, in a conference with counsel, that the jury was "only supposed to be deliberating on the first charge so that's their first mistake," the trial court proposed to "ask the foreperson if further deliberations would be useful in reaching a verdict on the first charge." If the answer was "yes," the trial judge would send the jury back to deliberate. If the answer was "no," the trial judge planned to give a *Winters* instruction.[1] The judge added that he would also tell the jurors that they were to deliberate on the first count until they reached a verdict on that count. In response defense counsel moved for a mistrial but did not otherwise object to the judge's proposals.

When the jury was called in, the following colloquy took place:

> THE COURT: Let me first say to you that the instructions that I gave you and as the verdict form says, you are only supposed to deliberate on the first charge.
>
> THE FOREPERSON: True.

THE COURT: And you should not deliberate on the second charge until the jury unanimously finds the defendant not guilty of the first charge. So, right now you should only be deliberating on the first charge. Now, let me ask you do you understand that?

> Your answer should be yes or no. Do you think that with further deliberations the jury will be able to reach a unanimous verdict on the first charge?
>
> THE FOREPERSON: An honest opinion, Your Honor, no.

The judge then gave the *Winters* instruction, *see supra* note 1, and sent the jury back to deliberate. At some time the next morning the jury announced that it had reached a guilty verdict. Appellant claims that this verdict was improperly coerced by the court's repetition of the "acquittal first" instruction after the jury had reported a deadlock.

In *(Nathan) Jones v. United States,* 544 A.2d 1250, 1254 (D.C.1988), we held that "when the jury reports a deadlock between the greater and the lesser offense, the 'acquittal first' instruction should not be given because it is impermissibly coercive." *See also Parker v. United States,* 601 A.2d 45, 47–48 (D.C.1991). In both *(Nathan) Jones* and *Parker,* however, defense counsel had specifically asked the trial court to allow the jury to consider the lesser-included offense. In this case, by contrast, defense counsel made no such request, nor did he otherwise object to the repetition of the "acquittal first" instruction, although he did move for a mistrial. We must therefore consider whether, under the circumstances of this case, the trial judge's "acquittal first" reinstruction in the face of the jury note amounted to plain error. *See Watts v. United States,* 362 A.2d 706, 709 (D.C.1976) (en banc) ("errors not objected to at trial are unreachable on review unless they fall within the purview of the plain error rule"). We conclude that it did not.

---

1. *See Winters v. United States,* 317 A.2d 530 (D.C.1974) (en banc); CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 2.91 (3d ed. 1978). The instruction the trial court actually gave essentially followed Alternative B in the model instructions.

The alternative to the "acquittal first" instruction is the "reasonable efforts" instruction, in which the court tells the jury that it may consider the lesser included offense if it is unable to reach a verdict on the greater offense after making all reasonable efforts to do so. *See Cosby v. United States*, 614 A.2d 1291, 1294 n. 4 (D.C.1992); *(Lorenzo) Wright v. United States*, 588 A.2d 260, 261–62 (D.C.1991). In *(Lorenzo) Wright*, we held that the "reasonable efforts" instruction must be given where it is timely requested by defense counsel. 588 A.2d at 262. But we have never said that the court is obliged to give the "reasonable efforts" instruction absent a request by defense counsel. Indeed, we have concluded that neither the "acquittal first" nor the "reasonable efforts" instruction is wrong as a matter of law. *Id.*

Both the "acquittal first" and the "reasonable efforts" instructions present tactical advantages and disadvantages from the defendant's point of view. The advantage of the "acquittal first" instruction, for the defendant, is that where the jury fails to agree on conviction or acquittal of the greater offense, it cannot adopt the easy compromise of convicting on the lesser offense. Thus, the defendant may escape any conviction at all, even where the evidence with regard to the lesser charge is fairly strong, and the government will have to decide whether the case merits the time and expense of mounting a new trial. The disadvantage of the "acquittal first" instruction is that, faced with a choice between a conviction on the greater offense and no conviction at all, jurors who might have preferred to convict only on a lesser offense may go along with others who are willing to convict on the greater offense, especially where there is a majority in favor of conviction on the greater charge. The "reasonable efforts" instruction presents similar advantages and disadvantages in reverse. It may lessen the probability that the jury will convict on the greater

offense, but it may also increase the probability that the jury will convict on the lesser charge. *See id.* at 261–62; *United States v. Tsanas*, 572 F.2d 340, 346 (2d Cir.), *cert. denied*, 435 U.S. 995, 98 S.Ct. 1647, 56 L.Ed.2d 84 (1978). Determinations as to which instruction is better for the defendant will vary from case to case, depending upon the strength of the government's evidence and the defendant's own desires.

For these reasons, we believe that the decision as to which instruction is preferable must be left to the defendant. Were we to hold that a miscarriage of justice results whenever the trial court gives an "acquittal first" instruction to a deadlocked jury, even when the defense does not object, we would, in effect, be taking this tactical decision out of the defendant's hands. Just as we have held that the trial court is obliged to instruct the jury in the form timely selected by the defendant, *see (Lorenzo) Wright*, 588 A.2d at 262, so we think it is not for this court to coerce the defendant's choice in this matter by ordaining in advance which instruction must be given to a deadlocked jury. Accordingly, bearing in mind both the relative strength of the government's evidence in this case and the tactical discretion involved in the choice between the "acquittal first" and the "reasonable efforts" instructions, we conclude that the trial court's instruction did not result in plain error.[2] As we observed in *Allen v. United States*, 495 A.2d 1145 (D.C.1985) (en banc),

> instructional errors not raised at trial will not be dist[ur]bed on appeal if … counsel's failure to object can be viewed as a tactical choice. For in such cases, it can hardly be maintained that the alleged error effected a "miscarriage of justice."

*Id.* at 1152 (citing *(James) Jones v. United States*, 477 A.2d 231, 242 (D.C.1984); *Bennett v. United States*, 375 A.2d 499, 504 (D.C.1977); quoting *Adams v. United States*, 302 A.2d 232, 234 (D.C.1973)).

---

**2.** We also must be mindful of the risk that "a shrewd attorney who has a weak defense [may] conclude that his [or her] best strategic response to trial court errors is to remain silent, hoping thereby to 'sow error in the record.'" *Johnson v. United States*, 387 A.2d 1084, 1086 (D.C.1978) (en banc).

### III.

■ Appellant also contends that his constitutional right to the effective assistance of counsel was violated by his counsel's failure to file a motion to suppress the bundle of heroin packets recovered from him through the use of the "Heimlich maneuver." In order to sustain this claim, appellant must satisfy the familiar two-part test set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Appellant must show, first, that counsel's performance was so deficient as to fall below an objective standard of reasonableness under prevailing professional norms and, second, that the deficient performance prejudiced the defense. *Id.* at 687–688, 104 S.Ct. at 2064–2065. *See also Gillis v. United States*, 586 A.2d 726, 728 (D.C.1991). We note further that, in deciding whether counsel's performance was deficient, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.

Appellant grounds his ineffective assistance claim on the premise that the use of the Heimlich maneuver to recover the heroin bundle from him was an illegal intrusion, analogizing this action to the forced vomiting at issue in *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952). It is true, of course, that even "searches incident to a valid arrest can be unconstitutional when the scope of the search is unjustified and the method used shocks the conscience." *Washington v. United States*, 594 A.2d 1050, 1053 (D.C.

1991) (remanding case for trial court to consider defendant's evidence of forcible body cavity search). In this case, however, the trial court concluded that the " 'scope of the particular intrusion, the manner in which it [was] conducted, the justification for initiating it, and the place in which it [was] conducted' were proper." Order of November 26, 1991 (quoting *Bell v. Wolfish*, 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979), *quoted in Washington*, 594 A.2d at 1052). The trial court, therefore, rejected appellant's claim of ineffective assistance of counsel.[3]

Without actually deciding whether the search method used in this case by police was unconstitutional, we conclude that there is no basis for reversing the trial court's ruling. The Heimlich maneuver, despite its abstruse-sounding name, is a familiar means of aiding choking victims by locking one's arms about the victim from behind and giving a sharp upward thrust just below the rib cage. *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 774 (26th ed. 1981). This action involves no direct invasion or exposure of the body. Moreover, from the record in this case it appears that: the officers had probable cause to arrest before the search and had good reason to believe that the evidence concealed by appellant was contraband; there was some possibility that the evidence might be altered by appellant's action; the method used by the officers to recover this evidence threatened no danger to appellant's health or safety and was less demeaning to appellant than alternative methods;[4] and there was a high likelihood that this simple method would result in the recovery of the evidence. Under these circumstances, the

---

3. The trial court deemed a hearing unnecessary because the record was complete on the issue raised by appellant, there were no material facts in dispute, and defense counsel's death had made it impossible to obtain any further information concerning his strategy. Appellant does not challenge this aspect of the trial court's decision on appeal. *Compare Ellerbe v. United States*, 545 A.2d 1197, 1198–99 (D.C.) ("movant is entitled to a hearing on his [or her] claims regarding the ineffective assistance of trial counsel only when the claims cannot be disposed of by resort to the files and records of the case because the claims involve matters outside of the record"), *cert. denied*, 488 U.S. 868, 109

S.Ct. 174, 102 L.Ed.2d 144 (1988), *with (Cleveland) Wright v. United States*, 608 A.2d 763, 766 (D.C.1992) ("To uphold the denial of a § 23–110 motion without a hearing, this court must conclude that under no circumstances could the movant establish facts warranting relief.").

4. *Compare United States v. Montoya de Hernandez*, 473 U.S. 531, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985) (detention of woman suspected of drug smuggling for 27 hours before her arrest while waiting for her to defecate, followed by rectal examination).

applicable precedent in this jurisdiction, as well as relevant caselaw from other jurisdictions, undercuts appellant's suggested argument for suppression.[5] Consequently, we cannot say that the intrusion upon appellant's privacy was so obvious or so shocking to the conscience that the failure to file a motion to suppress this evidence clearly fell below the standard of reasonable professional assistance. "[T]he Sixth Amendment ... does not require defense counsel to 'make every motion in the book.'" *Jefferson v. United States*, 474 A.2d 147, 150 (D.C.1984) (quoting *Harried v. United States*, 128 U.S.App.D.C. 330, 335, 389 F.2d 281, 286 (1967)).

*Affirmed.*

---

**5.** In *United States v. Harrison*, 139 U.S.App.D.C. 266, 432 F.2d 1328 (1970), the United States Court of Appeals for the District of Columbia Circuit held that, in executing a search warrant, police did not use undue force or brutality in seizing appellant by the throat to prevent him from swallowing an envelope. This case is binding precedent on this court under *M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C.1971). *See also, e.g., United States v. Caldera*, 421 F.2d 152 (9th Cir.1970) (force used to prevent suspect in border search from swallowing evidence was not shocking or unreasonable); *Espinoza v. United States*, 278 F.2d 802 (5th Cir.) (officers did not use any more force than was necessary under the circumstances in choking defendant and attempting to pry open his mouth in order to recover evidence), *cert. denied*, 364 U.S. 827, 81 S.Ct. 65, 5 L.Ed.2d 55 (1960); *State v. Lewis*, 115 Ariz. 530, 566 P.2d 678 (1977) (use of choke hold to prevent accused from swallowing evidence while second officer slapped her on the back to get her to open her mouth did not violate due process); *People v. Fulkman*, 235 Cal.App.3d 555, 286 Cal.Rptr. 728 (1991) (force used in executing warrant was not unreasonable where police pounded wheelchair-bound defendant on back, applied pressure to his throat, and used a pen to try to force defendant's jaws open in order to retrieve a wad of tape that police had seen defendant insert into his mouth); *Foxall v. State*, 157 Ind.App. 19, 298 N.E.2d 470 (1973) (police did not use unreasonable force in inserting shoehorn into defendant's mouth to extract packets); *People v. Holloway*, 416 Mich. 288, 330 N.W.2d 405 (1982) (officers did not violate Fourth Amendment in applying pressure to defendant's jaws and throat and using fingers to extract packets from his mouth), *cert. denied*, 461 U.S. 917, 103 S.Ct. 1900, 77 L.Ed.2d 288 (1983); *State v. Santos*, 101 N.J.Super. 98, 243 A.2d 274 (App.Div.1968) (narcotics retrieved from defendant's accomplice by grabbing accomplice around the throat were not inadmissible); *Hernandez v. State*, 548 S.W.2d 904 (Tex. Crim.App.1977) (holding admissible evidence that police obtained from appellant's mouth by holding appellant on ground and choking him until he spit it out); *State v. Young*, 15 Wash. App. 581, 550 P.2d 689 (1976) (no due process violation where police, acting on probable cause, constricted defendant's throat and pinched his nose to force him to spit out balloon), *cert. denied*, 431 U.S. 931, 97 S.Ct. 2635, 53 L.Ed.2d 246 (1977). *Cf. United States v. Mont*, 306 F.2d 412 (2d Cir.) (refusing to order suppression of evidence expelled by defendant when he received blow to solar plexus in the course of resisting arrest), *cert. denied*, 371 U.S. 935, 83 S.Ct. 310, 9 L.Ed.2d 222 (1962). *But see State v. Williams*, 16 Wash.App. 868, 560 P.2d 1160 (1977) (police violated due process in pinning defendant down, grabbing his throat, pinching his nose, and using spoon to extract balloons from defendant's mouth).