[Civ. No. 25924.   Second Dist., Div. Three.   Jan. 10, 1962.]

HERACLIO VASQUEZ, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; THE PEOPLE, Real Party in Interest.

62

Wesley Russell and James L. Garcia for Petitioner.

No appearance for Respondent.

William B. McKesson, District Attorney, Harry Wood and Harry B. Sondheim, Deputy District Attorneys, for Real Party in Interest.

FRAMPTON, J. pro tem.*—This is a petition for a writ of prohibition seeking to restrain the respondent court from proceeding with the trial of petitioner on a charge of violation of section 11500, Health and Safety Code, on the grounds that the evidence used against him was obtained by means which violated the due process clauses of the state and United States Constitutions.

The facts as disclosed by a reading of the transcript of testimony taken at the preliminary hearing show that one Virgin, a police officer of the city of Los Angeles, who had a background of education in narcotics relating to their content, use and effect, and who was attached to the narcotic detail, had previously made some 500 arrests based upon violation of the narcotic laws, and who had qualified and testified as an expert witness on the subject of narcotics violations some 50 times in the respondent court, on the night of June 28, 1961, being armed with a search warrant to search the person of one Richard Costa, a known narcotic peddler, also Costa's residence situated at 3315 Portola Street in the city of Los Angeles, drove to such address. On arrival he observed Costa talking to petitioner who was seated behind the wheel of his car across the street from 3315 Portola Street. Upon approaching the vehicle he saw petitioner reach down at his side and when he raised his arm the officer observed a condom held between petitioner's forefinger and thumb and which contained a white powder. It was the officer's opinion that the object contained a fourth ounce of heroin. Petitioner swallowed the parcel in the officer's presence in spite of a command, "Don't swallow it or I will shoot." The officer stated to petitioner: "You swallowed a quarter, didn't you," and petitioner replied, "Yes." It was the opinion of the officer, based upon his experience in such matters, that petitioner had swallowed a quarter ounce of heroin.

Petitioner was taken to the Lincoln Heights Receiving Hospital when Allen Harvey Becker, a duly licensed and qualified medical doctor on the staff of the hospital, administered apo-

*Assigned by Chairman of Judicial Council.

morphine to petitioner by hypodermic needle over petitioner's protest. He gave the injection to prevent the absorption into petitioner's system of what he believed to be a lethal dose of heroin. This caused nausea and vomiting and petitioner was thereby caused to regurgitate the condom, found to contain five grams of heroin. Petitioner became extremely weak and was strapped to a treatment table for his own protection, during which time the handcuffs were removed. After the object was regurgitated, petitioner continued to have what was described as the "dry heaves," that is, he continued to vomit without anything left in his stomach to be removed. This was accompanied by nausea. This process took about 30 minutes, after which petitioner was able, unassisted, to accompany the officers to his room in the Marmion Hotel several miles distant from the receiving hospital, where a further cache of heroin (50 grams) was found. The testimony further disclosed that objects such as that swallowed by petitioner may pass completely through the digestive tract, by the ordinary processes of nature, without causing any ill effects. The rubber container would effectively prevent the contents from being absorbed into the system.

Dr. Becker testified that apomorphine causes nausea, vomiting, and sometimes weakness and dizziness. He stated further that the giving of such medicine in the form and manner herein administered was an approved and commonly used medical procedure. It was the only procedure available as petitioner had refused intubation (stomach pumping) and the latter procedure is dangerous because of the possibility of puncture of the esophagus.

Dr. Becker testified further that he had been informed that petitioner had been observed to swallow a large packet of unidentified substance presumed to be heroin; that a minimum lethal dosage of heroin would be one-half gram. A dosage less than one-half gram would make the person ill. It was not shown that he was informed that the substance was contained in a condom.

Petitioner objected to and physically resisted the giving of the hypodermic injection of apomorphine, denying at all times to the doctor that he had swallowed any heroin.

At the time of the injection, petitioner was handcuffed with his hands behind him, having been brought to the receiving hospital immediately after his arrest. The receiving hospital was not connected with the city jail and was not a security facility. He kept moving his arm to prevent the doctor from

inserting the hypodermic needle. It was necessary for two police officers present to assist Dr. Becker by each holding one of petitioner's arms to prevent a movement which might result in the breaking of the hypodermic needle in petitioner's arm, thereby causing serious complications.

The admission of physical evidence does not violate the privilege against self-incrimination (*People* v. *Duroncelay* (1957) 48 Cal.2d 766 [312 P.2d 690]), unless the method of obtaining it is such as to "shock the conscience" and "offend even hardened sensibilities." (*Rochin* v. *California,* 342 U.S. 165 [72 S.Ct. 205, 96 L.Ed. 183, 25 A.L.R.2d 1396].)

In *Rochin* the facts were as follows: "On July 1, 1949, about 9 a.m., three deputy sheriffs entered defendant's bedroom after having forced the bedroom door open. They were not authorized by search warrant or at all to enter the room. Defendant and a Mrs. Hernandez were in the room. Two capsules, which were wrapped in cellophane, were on a small table therein. Jack Jones, one of the deputies, said to the defendant, 'Whose stuff is this?' Defendant then grabbed the capsules and put them in his mouth. Jones testified that at that moment the three deputies jumped upon the defendant, grabbed him by the throat, and began to squeeze his throat in an effort to eject the capsules from his mouth; that force was applied to his throat; that defendant 'hollered a little bit'; that he (Jones) put his fingers in defendant's mouth; and they put handcuffs on defendant while he was in the room. Jones then took the defendant to the Angelus Emergency Hospital and into the operating room there. A doctor's assistant strapped the handcuffed defendant to the operating table. Dr. Mier, assumed by the officers to be a doctor of medicine, placed an empty pail by the defendant, placed 'a tube down the defendant's throat,' and released a white chemical solution into the tube and into defendant's stomach. The defendant vomited into the pail, and two capsules in cellophane floated in the pail. Jones took the capsules from the pail and delivered them to a chemist in the sheriff's office." (*People* v. *Rochin,* 101 Cal.App.2d 140 [225 P.2d 1, 913].)

The Supreme Court of the United States in reviewing the *Rochin* case held that the conduct of the sheriff's deputies in forcing entry to defendant's home and bedroom, without a search warrant, where prior to such forcible entry no crime was committed in the presence of such officers; where after such entry three deputy sheriffs jumped on the defendant, grabbed him by the throat; applied sufficient force to his

throat in squeezing it to cause him to holler and that one deputy put his finger in defendant's mouth; in thereafter forcibly extracting the contents of his stomach, was such as to shock the conscience and offend even hardened sensibilities, and that such conduct should not be tolerated. The court said further: "It would be a stultification of the responsibility which the course of constitutional history has cast upon this Court to hold that in order to convict a man the police cannot extract by force what is in his mind but can extract what is in his stomach." (*Rochin* v. *California, supra.*)

■■■ The necessity to save life will justify a trespass upon property which under other circumstances would amount to an illegal search and seizure. (*People* v. *Roberts* (1956) 47 Cal.2d 374 [303 P.2d 721].)[1] There is the suggestion in the concurring opinion of Judge Chambers in the *Blackford* case that concern for the prisoner's health might justify a trespass upon the person. (*Blackford* v. *United States* (9 Cir. 1957) 247 F.2d 745, at 754.)

■■ Both federal and state courts have held that lack of consent and actual resistance to search on the part of an accused are not enough to create an illegal search and seizure. (Forcibly removing narcotics from defendant's rectum, *People* v. *Woods,* 139 Cal.App.2d 515 [293 P.2d 901]; extraction of blood for blood alcohol content test by a skilled technician in accordance with approved medical standards, *People* v. *Duroncelay,* 48 Cal.2d 766 [312 P.2d 690]; removal of blood for blood alcohol test from unconscious person, *Breithaupt* v. *Abram* (1957) 352 U.S. 432 [77 S.Ct. 408, 1 L.Ed.2d 448]; forcible removal of narcotics from rectum of defendant after refusal to submit, accompanied by physical resistance to examination, *Blackford* v. *United States* (1957) 247 F.2d 745; recovery of narcotics from digestive tract by use of Epsom salts where defendant consented to some extent but the court in ruling did not rely on such consent, but based its decision rather on the fact that the acts of the physician and officers were not unreasonable under the circumstances, *United States* v. *Michel* (1957) 158 F.Supp. 34, affirmed under title of *King* v. *United States* (1958) 258 F.2d 754. To the same effect, *Barrera* v. *United States* (1960) 276 F.2d 654.)

An examination of these cases fails to disclose a factual

---

[1] The trespass in the *Roberts* case involved an illegal entry into an apartment on probable cause that someone inside was seriously ill and in need of medical attention.

situation showing such a use of force, with its concomitant physical illness, as is presented by this record.

In commenting on the holding in the *Rochin* case, the Supreme Court of this state said: "In brief, the *Rochin* case holds that brutal or shocking force exerted to acquire evidence renders void a conviction based wholly or in part upon the use of such evidence." (*People* v. *Haeussler*, 41 Cal.2d 252, 259 [260 P.2d 8].)

"Due process of law, as a historic and generative principle, precludes defining, and thereby confining, these standards of conduct more precisely than to say that convictions cannot be brought about by methods that offend 'a sense of justice.' See Mr. Chief Justice Hughes, speaking for a unanimous court in *Brown* v. *Mississippi*, 297 U.S. 278, 285, 286 [56 S.Ct. 461, 80 L.Ed. 682, 686, 687]." (*Rochin* v. *California, supra.*)

It remains true, however, that each case of this kind is a fact case. The correct decision of each depends not so much upon a higher critical examination of the accumulated decisional gloss as upon a common-sense determination of whether, within the meaning the Constitution uses, the particular search and seizure has been unreasonable, that is, whether what was done and found bears a reasonable relation to the authority then possessed and exercised or transcends it to become oppression. (*In re Ginsburg*, 147 F.2d 749, 750.) Each case is to be decided on its own facts and circumstances. (*Harris* v. *United States*, 331 U.S. 145 [67 S.Ct. 1098, 91 L.Ed. 1399, at 1405].) However, the basis of the decision in *Rochin* must remain controlling, when applied to the facts as disclosed by the record here.

▮ The conduct of the police and medical doctor in extracting the narcotics from petitioner's stomach, under the circumstances, was brutal and shocking; it offends one's sense of justice and should not be tolerated. It was in violation of petitioner's constitutional rights.

Count I of the information is based upon the charge of possession of the narcotics which petitioner was observed to have swallowed in the presence of the arresting officers and which was extracted from his body in the manner herein described. ▮ In Count II he is charged with possession of narcotics which were found after his arrest in his apartment, several miles distant from the scene of his arrest, upon a search that was not incidental thereto, and which were seized without benefit of a search warrant. Under the holding in *Hernandez* v. *Superior Court*, 143 Cal.App.2d 20 [299 P.2d

678], the evidence in support of this count was unlawfully seized and may not be used against petitioner.

The peremptory writ is granted as prayed for, and the alternative writ is discharged.

Shinn, P. J., and Ford, J., concurred.

A petition for a rehearing was denied January 26, 1962, and the petition of the real party in interest for a hearing by the Supreme Court was denied March 7, 1962.