[Crim. No. 18446. In Bank. Oct. 7, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
RITA NORIEGA BRACAMONTE, Defendant and Appellant.

**COUNSEL**

Donald H. Glasrud, under appointment by the Supreme Court, and Irwin & Thuesen for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Rick McClendon and Paul H. Dobson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WRIGHT, C. J.**—Defendant Rita Noriega Bracamonte appeals from a judgment of conviction in a nonjury trial on an indictment charging possession of heroin in violation of Health and Safety Code section 11500 (now § 11350). Defendant challenged by pretrial motion (Pen. Code, § 1538.5) and now challenges on appeal the admission into evidence of seven balloons, each containing heroin, obtained by the use of an emetic solution which was forced upon her and which caused her to regurgitate. We conclude that under the evidence produced in the instant case the forced ingestion of the emetic solution was an unreasonable search and seizure in violation of both the United States and California Constitutions. Accordingly, we reverse the judgment.

On March 10, 1972, William G. Miller, a field supervisor for the California Bureau of Narcotic Enforcement, acting on knowledge gained from two confidential informants and from observations made by himself and by other agents, procured a warrant authorizing the search of the residence of defendant and her husband, their vehicles and their persons.

On the morning of March 15, 1972, an agent who was participating in the search observed defendant enter one of the cars described in the warrant and drive north on Hayes Avenue in Fresno. This information was radioed to Agents Richard Walley and Delbert Pierce who were parked near the intersection of Hayes and Ashlan Avenues. Defendant approached the intersection a few moments later and came to a stop. Pierce maneuvered his vehicle in front of defendant's car and Walley alighted and approached the defendant's automobile. Defendant looked directly at Walley and immediately thereafter put her car in reverse and accelerated backwards. Walley observed defendant reach down with her right hand toward the seat of the automobile and, when the hand reappeared, rapidly place two balloons in her mouth and swallow them. As defendant's car continued backwards, Walley saw defendant make two more quick hand movements, each time apparently placing more objects into her mouth.

Defendant was apprehended a short distance away by other agents. After a struggle she was removed from her car and thereafter was handcuffed and advised of her constitutional rights. She was driven to her residence where the agents conducted a search of the house. Approximately 20 minutes later she was transported to a local hospital

for the purpose of retrieving through medical methods the objects which Walley had observed defendant swallowing.

At the hospital Walley exhibited the search warrant to the attending physician of the emergency section, told the latter that the warrant authorized a search of defendant's person and requested that her stomach be pumped. The doctor ordered two nurses to prepare an emetic solution known as Syrup of Ipecac. After defendant refused to drink the liquid, she was forced to her back on a table and the two nurses prepared to strap her down. Defendant, whose hands were handcuffed behind her back, strenuously resisted and a struggle ensued. The nurses eventually put a strap across her chest and with Walley's assistance, placed a strap across her knees. Defendant continued to kick and struggle.

Because of anticipated difficulty in forcing defendant to swallow the liquid, the nurses inserted a rubber tube through one of defendant's nostrils and down into her esophagus, planning to use the tube to administer the emetic directly into defendant's stomach. Defendant's continued physical resistance, however, caused the tube to move about and prevented the nurses from administering the liquid. After about five minutes of repeated but unsuccessful attempts, defendant said that the tube was "too painful" and agreed to drink the emetic. Shortly thereafter she regurgitated seven multi-colored balloons which later proved to contain heroin. She continued vomiting for approximately 10 minutes and remained nauseous for approximately an additional quarter of an hour.

It was stipulated by counsel that if the attending physician was called to testify he would state that he ordered the emetic because of the warrant which he understood authorized the search and that absent a search warrant he would not force a patient to regurgitate over objections.

Based on the heroin found in the balloons[1] a criminal complaint was filed charging defendant with possession of heroin. That complaint, however, was dismissed at the time of the preliminary hearing on the ground that the evidence upon which the charge was predicated was the product of impermissible police activity which shocked the conscience and offended basic concepts of due process. Defendant was subsequently charged by way of a grand jury indictment and proceedings which followed resulted in the conviction which is now before us.

[1] It does not appear that any contraband was found in defendant's car or residence.

## I

Defendant preliminarily contends that the dismissal of the criminal complaint was a decision on the merits, thus invoking the doctrine of res judicata as a defense to any subsequent prosecution for the same offense. This contention is without merit and we may summarily dispose of the same. "It is, of course, the rule in this state that the magistrate's order dismissing a felony complaint is not a bar to another prosecution for the same offense, either by filing a subsequent complaint, or by seeking a grand jury indictment. [Citations omitted.]" (*People* v. *Uhlemann* (1973) 9 Cal.3d 662, 666 [108 Cal.Rptr. 657, 511 P.2d 609].) "This rule specifically applies when the previous dismissal was based on the magistrate's conclusion that the evidence was illegally obtained." (*People* v. *Prewitt* (1959) 52 Cal.2d 330, 340 [341 P.2d 1].)

## II

The principal issue before us is whether the seven heroin-filled balloons were properly received in evidence. Defendant argues that the instant circumstances establish a violation of her constitutional right to due process of law (U. S. Const., Amend. XIV, § 1; Cal. Const., art. I, § 15) as well as her right to be free from unreasonable searches and seizures (U. S. Const., Amends. IV & XIV, § 1; Cal. Const., art. I, § 13), and therefore that the evidence so obtained should have been suppressed.

In the seminal case of *Rochin* v. *California* (1952) 342 U.S. 165 [96 L.Ed. 183, 72 S.Ct. 205, 25 A.L.R.2d 1396], police officers entered the defendant's home and broke into his bedroom where they observed the defendant swallowing two capsules. The police struggled with him, grabbing his throat and sticking a finger into his mouth in an unsuccessful attempt to extract the capsules. He was then handcuffed and taken to a hospital where an emetic solution was forced into his stomach through a tube, causing him to regurgitate the two capsules which were wrapped in cellophane. The United States Supreme Court concluded that the brutal police conduct offended the due process clause of the Fourteenth Amendment and accordingly reversed the conviction. It is obvious, nevertheless, that the conduct of the police in *Rochin* presented an issue of constitutional dimensions under the Fourth Amendment (see Note, *Forcible Administration of Blood Tests: Schmerber* v. *California* (1967) 14 U.C.L.A. L.Rev. 680, 682, fn. 12) which the high court did not consider because the exclusionary rule was not then

applicable to the states.[2] (*People* v. *Duroncelay, supra,* 48 Cal.2d 766, 771; *People* v. *Haeussler* (1953) 41 Cal.2d 252, 258-259 [260 P.2d 8], cert. den. (1954) 347 U.S. 931 [98 L.Ed. 1082, 74 S.Ct. 533]; see *Schmerber* v. *California, supra,* 384 U.S. 757, 766; *Breithaupt* v. *Abram, supra,* 352 U.S. 432, 434.) The issue is now squarely before us.

■ The Fourth Amendment, now applicable to the states through the Fourteenth Amendment, and California's parallel provision safeguard the right to be free from unreasonable searches and seizures. Searches are proscribed which are not justified under the circumstances or which are made in an improper manner. (See *Schmerber* v. *California, supra,* 384 U.S. at p. 768 [16 L.Ed.2d at p. 918].) ■ Thus, even " 'a search which is reasonable at its inception may violate the Fourth Amendment by virtue of its intolerable intensity and scope.' " (*People* v. *Brisendine* (1975) 13 Cal.3d 528, 538 [119 Cal.Rptr. ·315, 531 P.2d 1099] (quoting *Terry* v. *Ohio* (1968) 392 U.S. 1, 17-18 [20 L.Ed.2d 889, 903-904, 88 S.Ct. 1868]).) ■ Absent certain well recognized exigent circumstances, a search reasonable at its inception is one which is based on probable cause and one for which a warrant has been issued. (*People* v. *Superior Court (Hawkins)* (1972) 6 Cal.3d 757, 762 [100 Cal.Rptr. 281, 493 P.2d 1145].) Body searches are no exception. "Search warrants are ordinarily required for searches of dwellings, and, absent an emergency, no less could be required where intrusions into the human body are concerned." (*Schmerber* v. *California, supra,* 384 U.S. 757, 770 [16 L.Ed.2d 908, 919].)[3]

■ Although in the instant case there clearly was probable cause to believe that the defendant had swallowed packages containing heroin, there was no warrant justifying the intrusion into her body. As previously set forth, the agents had procured a search warrant authorizing the

---

[2]The exclusionary rule was originally adopted in *Weeks* v. *United States* (1914) 232 U.S. 383 [58 L.Ed. 652, 34 S.Ct. 341], which barred evidence obtained by federal officers in violation of the Fourth Amendment. The Supreme Court subsequently held that the rule was not constitutionally imposed upon the states. (*Wolf* v. *Colorado* (1949) 338 U.S. 25 [93 L.Ed. 1782, 69 S.Ct. 1359]; see *Breithaupt* v. *Abram* (1957) 352 U.S. 432, 434 [1 L.Ed.2d 448, 450, 77 S.Ct. 408].) It was not until 1961, when *Wolf* was overruled, that the exclusionary rule was made mandatory in state prosecutions. (*Mapp* v. *Ohio* (1961) 367 U.S. 643 [6 L.Ed.2d 1081, 81 S.Ct. 1684, 84 A.L.R.2d 933]; see *Schmerber* v. *California* (1966) 384 U.S. 757, 766 [16 L.Ed.2d 908, 917, 86 S.Ct. 1826].) California had earlier adopted the exclusionary rule based on both the Fourth Amendment as well as on article I, section 19 (now § 13) of the California Constitution. (*People* v. *Cahan* (1955) 44 Cal.2d 434 [282 P.2d 905, 50 A.L.R.2d 513]; see *People* v. *Duroncelay* (1957) 48 Cal.2d 766, 771 [312 P.2d 690].)

[3]We are not confronted with, nor do we decide, the issue of when, if at all, a search warrant may issue authorizing an intrusion into a suspect's body.

search of the residence of defendant and her husband, their vehicles and *their persons*. It is quite clear, and the People admit, that the warrant was not intended to authorize intrusions beyond the surfaces of their bodies. Assuming arguendo that the magistrate intended the warrant to justify such further intrusions, we find that the warrant did not so specify. (U.S. Const., Amend. IV; Cal. Const., art. I, § 13.)[4]

Having determined that the search could not be justified based upon the warrant, we next examine whether a warrantless search could legally have been conducted. In *People v. Jones* (1971) 20 Cal.App.3d 201 [97 Cal.Rptr. 492], undercover narcotics investigators observed the defendant as he participated in the purchase of red capsules which appeared to be a contraband. One officer rushed out of an unmarked car to make an arrest. Jones thrust the capsules into his mouth and quickly swallowed them. He was taken into custody and transported to a police station. Although he at first showed no signs of intoxication, he soon began exhibiting symptoms of a person under the influence of a barbiturate. He was taken to a nearby medical center where the attending physician made a medical judgment without any suggestions or requests by police officers that the defendant's stomach should be pumped. The doctor testified that such action was "necessary in order to possibly save his life" and, further, that the defendant "was very cooperative." (*Id.*, at p. 205.) The search in *Jones* could have been justified on two grounds, both of which distinguish that case from the one before us. ▉ In the first place, Jones consented to the intrusion which is always a justification for an otherwise illegal search. (See *People* v. *Schad* (1971) 21 Cal.App.3d 201, 209-210 [98 Cal.Rptr. 439].) Here, it cannot be asserted that defendant wilfully submitted to the administration of the emetic.

Secondly, *Jones* clearly involved an emergency which justified the medical procedure and the resulting intrusion. (Cf. *People* v. *Hill* (1974) 12 Cal.3d 731, 754 [117 Cal.Rptr. 393, 528 P.2d 1]; *People* v. *Roberts* (1956) 47 Cal.2d 374, 377-378 [303 P.2d 721]; *Vasquez* v. *Superior Court* (1962) 199 Cal.App.2d 61, 65 [18 Cal.Rptr. 140].) Although the facts suggest that Walley may have believed that a medical emergency existed and that it was necessary to remove the balloons to save defendant's life,[5]

---

[4]Defendant also argued that the affidavit in support of the search warrant did not meet the two-pronged test of *Aguilar* v. *Texas* (1964) 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509], as explained in *People* v. *Hamilton* (1969) 71 Cal.2d 176, 179-180 [77 Cal.Rptr. 785, 454 P.2d 681]. In light of our conclusion that the warrant did not justify the search here in issue, we need not decide the sufficiency of the affidavit in support of the warrant.

[5]The question of a medical emergency was presented at the hearing on the motion to suppress. It appears that Walley, in addition to placing reliance on the search warrant as

the court declined to find the existence of an emergency and it does not appear upon our examination of the record that such a finding was required as a matter of law.

In *Schmerber* v. *California, supra,* 384 U.S. 757, the defendant was convicted of driving an automobile while under the influence of intoxicants. "He had been arrested at a hospital while receiving treatment for injuries suffered in an accident involving the automobile that he had apparently been driving. At the direction of a police officer, a blood sample was then withdrawn from petitioner's body by a physician at the hospital." (*Id.,* at p. 758 [16 L.Ed.2d at pp. 912-913], fn. omitted.) Schmerber objected to the use as evidence of the chemical analysis of the blood sample which had been withdrawn without his consent. Unlike earlier cases (e.g., *Breithaupt* v. *Abram, supra,* 352 U.S. 432 (blood sample taken while defendant was unconscious after an automobile accident); *Rochin* v. *California, supra,* 342 U.S. 165), the United States Supreme Court reached the search and seizure issues presented. After noting the general warrant requirement, the court justified the search as one incident to a lawful arrest when "the delay necessary to obtain a warrant, under the circumstances, threatened 'the destruction of evidence,' *Preston* v. *United States,* 376 U.S. 364, 367." (*Schmerber* v. *California, supra,* 384 U.S. 757, 770 [16 L.Ed.2d 908, 919-920].)

We have had occasion to review the application of *Schmerber* to searches incident to a lawful arrest in light of recent United States Supreme Court authority. In *People* v. *Superior Court (Hawkins), supra,* 6 Cal.3d 757 we said: "In *Chimel* v. *California* (1969) 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034], the United States Supreme Court reiterated the doctrine that searches and seizures without warrants are per se unreasonable under the Fourth Amendment even if there is probable cause to search, except in rare situations, and traced the history of one of

justification for the intrusion, stated to the attending physician that he was concerned that if the balloons remained within defendant's body they might rupture, causing injury to her health. This expressed concern for defendant's health is inconsistent with Walley's failure to have brought her directly to the hospital instead of after the officers had returned to her residence and conducted a search there, and the further fact that she never exhibited the symptoms of a person under the influence of a narcotic. The physician never responded to Walley's statement of casual concern. Although the officer's concern, even if relevant to any issue, necessarily must have been grounded on facts then available to him, it nevertheless appears by stipulation that the physician, if he had been called as a witness, would have further testified that his medical opinion would be that the balloons would pass safely through the digestive tract, that the procedure was not necessary to protect defendant's life or health but that he would nevertheless have recommended regurgitation as a medical precaution. A pathologist whose testimony was also received pursuant to stipulation, also stated that there was a high statistical probability that the balloons would "pass through" without any difficulty.

these rare situations, namely searches incident to a lawful arrest. The Supreme Court pointed out that this exception emerged in dictum in *Weeks* v. *United States* (1914) 232 U.S. 383 [58 L.Ed. 652, 34 S.Ct. 341] and gradually wound its way to the dignity of a holding. The legitimate extent of a search incident to a lawful arrest followed an unclear and apparently inconsistent path until *Chimel* where the court unequivocally defined the purpose and extent of searches incident to a lawful arrest. 'When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons the latter might seek to use in order to resist arrest or effect his escape . . . . In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction . . . . There is ample justification, therefore, for a search of the arrestee's person and the area "within his immediate control"—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.' (*Chimel* v. *California, supra,* 395 U.S. 752, 762-763 [23 L.Ed.2d 685, 694].)

"In *Schmerber,* the Supreme Court unequivocally stated that even a lawful arrest would not in itself justify a seizure of blood without a warrant, unless there was in addition a 'clear indication' that a blood-alcohol test will reveal intoxication. The court indicated that a more stringent test was applicable because of the great interest in protecting the human body from intrusion. In the light of the clear and consistent holdings of the high court in this area, it would indeed be incongruous to say that absent exigent circumstances an intrusion without a warrant into a person's home is per se unreasonable even though the authorities have probable cause to believe it contains contraband or evidence of crime, and to reason at the same time from the same legal premises that such an intrusion into his physical body is constitutionally permissible merely if they have probable cause to believe it contains evidence of his intoxication." (*Id.,* at pp. 762-763.)

■ Thus, not only must there be more than probable cause to believe that contraband will be found (see Note, *Forcible Administration of Blood Tests: Schmerber v. California, supra,* 14 U.C.L.A. L.Rev. 680, 689; but see Comment, *The Reasonableness of Border Searches* (1968) 4 Cal. Western L.Rev. 355, 360-361), but to justify a search incident to a lawful arrest, there must also be the need to prevent the arrested person from obtaining a weapon or destroying evidence. ■ Here, although there was a "clear indication" that the defendant probably swallowed balloons of heroin, unlike the blood-alcohol cases where "the rapid dissipation of

the alcohol would make the delay involved in obtaining a search warrant unnecessary and unjustifiable" (*People* v. *Superior Court (Hawkins), supra,* 6 Cal.3d 757, 765, fn. 7), there was no substantial reason to believe that evidence would be destroyed. "The testimony further disclosed that objects such as that swallowed by petitioner may pass completely through the digestive tract, by the ordinary processes of nature, without causing any ill effects. The rubber container would effectively prevent the contents from being absorbed into the system." (*Vasquez* v. *Superior Court, supra,* 199 Cal.App.2d 61, 63.) It thus appears that defendant in the instant case easily could have been transported to jail and placed in an isolation cell and kept under proper surveillance.

We are mindful of the Supreme Court's warning in *Schmerber* that "[t]he integrity of an individual's person is a cherished value of our society. That we today hold that the Constitution does not forbid the States minor intrusions into an individual's body under stringently limited conditions in no way indicates that it permits more substantial intrusions, or intrusions under other conditions." (*Schmerber* v. *California, supra,* 384 U.S. 757, 772 [16 L.Ed.2d 908, 920].) We cannot but conclude that the forceful placing of a tube into the nostrils and down the esophagus of defendant which by reason of the pain inflicted upon her coerced her to agree to swallow the emetic, and the consequent regurgitation were more than a "minor intrusion into an individual's body" and that the high statistical probability that the balloons would "pass through" constituted a condition other than the emergency situation in *Schmerber.*

Our judgment herein is necessarily based on the record before us. There is, of course, no right to conceal or destroy evidence of criminal conduct. If, in the instant case, there was reasonable cause to believe that the balloons would not pass through the digestive tract but instead would break open and thereby dissipate, not only would the potential health hazard possibly justify the intrusion into defendant's stomach, but the fear of the destruction of evidence might also justify remedial action. We are unable in the instant case, however, to conclude that there is any basis upon which to uphold this non-consensual, warrantless search and the balloons should not have been received in evidence.

### III

We reiterate that a search, even if justified at its inception, may be unconstitutional by virtue of its intolerable intensity and scope. Furthermore, the use of excessive force which shocks the conscience

violates due process of law. (*Rochin* v. *California, supra,* 342 U.S. 165.) ▮ However, an intrusion into the body of a suspect, if conducted by medical personnel in a medical environment and according to accepted medical practices will not in itself constitute an unreasonable search or seizure. (*Schmerber* v. *California, supra,* 384 U.S. 757, 771-772 [16 L.Ed.2d 908, 920]; *People* v. *Superior Court (Hawkins), supra,* 6 Cal.3d 757, 761; *People* v. *Duroncelay, supra,* 48 Cal.2d 766, 771-772; *People* v. *Jones, supra,* 20 Cal.App.3d 201, 206; *People* v. *Kraft* (1970) 3 Cal.App.3d 890, 893, 895 [84 Cal.Rptr. 280].) Nor do such procedures violate due process. (*Schmerber* v. *California, supra,* 384 U.S. 757, 759-760 [16 L.Ed.2d 908, 913-914]; *Breithaupt* v. *Abram, supra,* 352 U.S. 432, 435-438 [1 L.Ed.2d 448, 450-452]; *People* v. *Duroncelay, supra,* 48 Cal.2d 766, 770; *People* v. *Haeussler, supra,* 41 Cal.2d 252, 260; *People* v. *Jones, supra,* 20 Cal.App.3d 201, 206; *People* v. *Woods* (1956) 139 Cal.App.2d 515, 521 [293 P.2d 901].)

The defendant argues that the conduct of the law enforcement officers, and medical personnel as their agents, was offensive to concepts of "fair play and decency," and was therefore violative of due process standards. In light of our resolution herein, we find it unnecessary to reach the merits of defendant's due process claims or to decide whether this search was conducted in an improper manner.

Our decision today is not meant to lend approval to defendant's attempts to conceal or destroy evidence. We simply recognize that "[t]he integrity of an individual's person is a cherished value of our society" (*Schmerber* v. *California, supra,* 384 U.S. 757, 772 [16 L.Ed.2d 908, 920]) which is protected from unreasonable searches and seizures.[6] Nor does today's decision condone in any manner the forceful resistance by criminal suspects. Had we decided this case upon due process considerations, ignoring the underlying search and seizure issues, we would have perpetuated a rule which encourages violent confrontations between suspects and police. We "cannot accept an analysis that would make

---

[6]We certainly do not intend to curtail proper police efforts to prevent the destruction of evidence. Inasmuch as the mouth is not a sacred orifice and there is no constitutional right to destroy or dispose of evidence, attempts to swallow evidence can be prevented (*People* v. *Miller* (1967) 248 Cal.App.2d 731 [56 Cal.Rptr. 865]; *People* v. *Bass* (1963) 214 Cal.App.2d 742 [29 Cal.Rptr. 778]) as long as excessive force is not employed. (*People* v. *Parham* (1963) 60 Cal.2d 378 [33 Cal.Rptr. 497, 384 P.2d 1001], cert. den. (1964) 377 U.S. 945 [12 L.Ed.2d 308, 84 S.Ct. 1353]; *People* v. *Sanders* (1969) 268 Cal.App.2d 802 [74 Cal.Rptr. 350]; *People* v. *Erickson* (1962) 210 Cal.App.2d 177 [26 Cal.Rptr. 546]; *People* v. *Sevilla* (1961) 192 Cal.App.2d 570 [13 Cal.Rptr. 714]; *People* v. *Brinson* (1961) 191 Cal.App.2d 253 [12 Cal.Rptr. 625], cert. den. (1962) 369 U.S. 876 [8 L.Ed.2d 279, 82 S.Ct. 1147]; *People* v. *Martinez* (1954) 130 Cal.App.2d 54 [278 P.2d 26].)

physical resistance by a prisoner a prerequisite to the existence of his constitutional rights." (*Breithaupt* v. *Abram, supra,* 352 U.S. 432, 441 [1 L.Ed.2d 448, 454] (Warren, C. J., dissenting).) Instead, we recognize that resistance alone does not make an otherwise proper search illegal (*Vasquez* v. *Superior Court, supra,* 199 Cal.App.2d 61, 65; *People* v. *Woods, supra,* 139 Cal.App.2d 515, 517), and that a search illegal in the first instance will not be made legal by reason of the resistance of the defendant.

The judgment is reversed.

McComb, J., Tobriner, J., Mosk, J., Sullivan, J., Clark, J., and Richardson, J., concurred.