[Civ. No. 19478. Third Dist. Dec. 19, 1980.]

DEBORAH ANN SHULTS, Petitioner, v.
THE SUPERIOR COURT OF BUTTE COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Sedor, Gilbert & Van Dervoort and J. Joseph Van Dervoort, for Petitioner.

Alan Lieberman, Michael R. Bush, Daniel L. Siegel, Andrew T. Holcombe, Marilyn Katz, Pettit & Martin, Lynne Bantle, Margaret C. Crosby, Alan L. Schlosser and Amitai Schwartz, as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Gregory W. Baugher and James Ching, Deputy Attorneys General, for Real Party in Interest.

**OPINION**

**PARAS, Acting P. J.**—Petitioner herein is the mother of two minor children, a son from a dissolved marriage, and a daughter (Tanya) born in July 1977. Petitioner had been receiving monthly aid to families with

dependent children grants under the "absent parent" category for the son since March of 1976 and for Tanya since March of 1977.

Charges of welfare fraud (Welf. & Inst. Code, § 11483) and perjury (Pen. Code, § 118) were filed against petitioner in October 1979, and a preliminary hearing was held on November 8 and 9, 1979. Petitioner was held to answer, and on November 13, 1979, an information was filed charging one count of "fraudulent receipt of aid for child" between November 1976 and July 1979 and 35 counts of perjury from January 1977 to July 1979. The charges for the period preceding March 1977 apparently relate to petitioner's alleged failure to report the presence of an unrelated adult male in her home; the later charges apparently relate to an additional allegation of failure to report the presence there of Tanya's father.

On February 5, 1980, the Butte County District Attorney noticed a motion for an order for production of blood samples from petitioner and Tanya to compare with a sample previously obtained pursuant to a search warrant from Tanya's alleged father and cohabitor.[1] The notice indicated a human leucocyte antigen test would be performed on the samples, which has the potential to supply positive indication of paternity. (See *Cramer* v. *Morrison* (1979) 88 Cal.App.3d 873, 878 [153 Cal.Rptr. 865].) The court ordered petitioner to present herself and Tanya for the drawing of blood.

Petitioner applied to this court for a stay order and writ of prohibition. We denied the application. Petitioner then applied to our Supreme Court which ordered us to issue an alternative writ. We complied and now consider the issues presented.

■ Petitioner contends the order for blood drawing and testing violates Fourth and Fifth Amendment federal constitutional rights and that the court has no jurisdiction to order blood tests of nonparties to a criminal action to facilitate a paternity determination. Amicus curiae Legal Services of Northern California argue that a determination of paternity has little relevance to a charge of falsely reporting the absence of an unrelated adult male from the home and that petitioner's daughter's rights are violated by an order which circumvents the statutory procedures and safeguards for paternity determinations. Amicus curiae American Civil Liberties Union Foundation of Northern California,

[1]Charges against the alleged father had been brought and dismissed when the search warrant was served on him at petitioner's preliminary hearing.

Inc. also argues that the blood test results are irrelevant to the present action and further contends that the order authorizes an unconstitutional search and violates protected privacy rights.

We first note that there is no question but that the court has jurisdiction to order the blood tests. (*People v. Bynon* (1956) 146 Cal.App.2d 7 [303 P.2d 75]; Evid. Code, § 896.) The issue here involves the Fourth Amendment.

The case is controlled by *People v. Scott* (1978) 21 Cal.3d 284 [145 Cal.Rptr. 876, 578 P.2d 123]. There the Supreme Court considered requirements for judicially authorized bodily intrusions. (21 Cal.3d at p. 292.) It held that where such authorization is sought, "the issuing authority *after finding probable cause to believe the intrusion will re-. veal evidence of crime*, must apply an additional balancing test to determine whether the character of the requested search is appropriate. Factors which must be considered include the reliability of the method to be employed, the seriousness of the underlying criminal offense and society's consequent interest in obtaining a conviction (cf. *Breithaupt v. Abram, supra*, 352 U.S. 432, 439 [1 L.Ed.2d 448, 453]; *People v. Duroncelay, supra*, 48 Cal.2d 766, 772 [312 P.2d 690]), the strength of law enforcement suspicions that evidence of crime will be revealed, the importance of the evidence sought, and the possibility that the evidence may be recovered by alternative means less violative of Fourth Amendment freedoms. (Cf. *Bracamonte, supra*, 15 Cal.3d at pp. 403-404 [124 Cal.Rptr. 528, 540 P.2d 624].) [¶] These considerations must, in turn, be balanced against the severity of the proposed intrusion. Thus, the more intense, unusual, prolonged, uncomfortable, unsafe or undignified the procedure contemplated, or the more it intrudes upon essential standards of privacy, the greater must be the showing for the procedure's necessity." (21 Cal.3d at p. 293; italics added.)

The *Scott* considerations obviously are applicable as much to third parties from whom the prosecution seeks evidence as to criminal defendants. (See *People v. Browning* (1980) 108 Cal.App.3d 117 [116 Cal.Rptr. 293].) We thus consider the *Scott* factors as they apply to petitioner and Tanya.[2] First, the type of blood test ordered yields scientifically reliable results. (*Cramer v. Morrison, supra*, 88 Cal.

---

[2]We are not impressed by the asserted difference between the case of Tanya, who is not an actual party to the litigation, and that of petitioner, who is. Regarding evidentiary matters, both generally occupy the same position. (Evid. Code, § 700.)

App.3d at pp. 877-878.) Second, fraud and perjury, while not life-threatening crimes, are certainly serious offenses violative of the basic fabric of modern society. Third, the "law enforcement suspicions" that the tests will reveal the paternity of the alleged father are supported by testimony at the preliminary examination that he and petitioner lived together since the spring of 1976 and referred to Tanya as their daughter. Fourth, although the evidence will not be determinative of the ultimate issues of fraud and perjury, it is relevant to the threshold issue of Tanya's paternity and thus petitioner's alleged false reporting. Fifth, we conceive of no possible alternative means less violative of Fourth Amendment freedoms than the drawing of blood samples to obtain the evidence sought.

Balancing the above considerations, all of which are favorable to the court's order, against the severity of the proposed intrusion, we conclude the balance is in favor of the taking of samples in a medically approved manner. The taking of blood samples by skilled technicians has long been a routine procedure (*Breithaupt* v. *Abram* (1956) 352 U.S. 432, 436-437 [1 L.Ed.2d 448, 451-452, 77 S.Ct. 408]), presenting only a minor bodily intrusion (*Scott, supra*, 21 Cal.3d at p. 292). It is neither intense, unusual, prolonged, uncomfortable or undignified.[3] As long as the usual medical precautions are observed (which is implicit in the phrase "in a medically approved manner"), we find no impediment to the ordering of the tests.

The petition is denied and the alternative writ is discharged.

Carr, J., concurred.

**REYNOSO, J.**—I dissent.

The majority would weaken the constitutional protections guaranteed by the Fourth Amendment, Fifth Amendment and the Ninth Amendment (right of privacy) to aid the prosecution's theory that defendant received AFDC funds for her minor child when she failed to report that a male was living in her home. The majority requires both defendant and her three-year-old daughter, Tanya, who is not a party, to submit to blood sampling.

---

[3]We cannot avoid making the comparison of the blood drawing procedure, involving a simple needle prick and perhaps 10 to 20 seconds of time, with the degrading 15 minute procedure involved in *Scott*.

Let us examine Tanya's situation. I agree with the majority that under *People* v. *Browning* (1980) 108 Cal.App.3d 117 [116 Cal.Rptr. 293], a law-abiding citizen (Tanya) is entitled to the same Fourth Amendment protections as a criminal defendant (her mother). However, I am bewildered by the majority's refusal to grant her those protections. Tanya is three years old, not a party, and unrepresented by counsel in these proceedings. She is not the victim of a crime, nor is Tanya a witness to the crimes charged.

When dealing with the intrusion into the body or privacy of victims and witnesses, the courts appear to express no sound public policy which guides them, but rather "have developed an attitude resting uncomfortably somewhere between studied indifference and benign neglect." (*People* v. *Browning, supra*, 108 Cal.App.3d 117, 122.) *Browning* was sharply critical of cases in which unreasonable intrusions into the body or privacy of victims have been sanctioned, particularly *People* v. *Bynon* (1956) 146 Cal.App.2d 7 [303 P.2d 75], a case relied upon by the majority. In *Bynon*, a child victim of section 288 was ordered to submit to a blood test "without a word as to the child's rights, simply assuming that as a part of criminal discovery, the child should submit to the removal of her blood on the basis that the results might be beneficial to the defense...[as] the obligation of all citizens to support their government." (*People* v. *Browning, supra*, 108 Cal.App.3d 117, 123.) The *Browning* court cites the more extreme example of the practice of court-ordered psychiatric examinations of the complaining witness in a sex case. "This must be a matter of some concern to the women of the State of California. If a woman who has been raped has to submit to a psychiatric examination, why not a man who has been robbed...It is a small wonder that the percentage of reported rapes is considerably less than the percentage of reported robberies." (*Ibid.*)

The *Browning* court held that witnesses have the same Fourth Amendment protection against government intrusion into their bodies as do defendants in criminal cases, and, unlike the majority, ruled that the requested bodily intrusion was constitutionally impermissible.

In like manner, *People* v. *Scott* (1978) 21 Cal.3d 284 [145 Cal.Rptr. 876, 578 P.2d 123], although relied upon by the majority, ruled the bodily intrusion constitutionally offensive. In applying the balancing test mandated by *Scott, supra*, Tanya deserves some sensitivity to her

rights to privacy and freedom from governmental intrusion. These rights are firmly based on the Constitution. The taking of a sample of her blood involves potential consequences more than the physical intrusion of a "simple needle prick" as the majority states.[1]

The resultant establishment (or not) of paternity extends the intrusion beyond the physical. The consequences are psychologically, socially, and legally very serious, and involves an invasion into personal dignity and privacy comparable to, if not greater than, the physical intrusion prohibited by the California Supreme Court in *People* v. *Scott, supra.* A determination of paternity has grave implications for all concerned—the alleged father, the child, the mother and the state. The child, who has been forgotten in the case at bench, is actually the one who has the most at stake. Her identity, in a very real sense, is being litigated when paternity is determined by the court. This judicial determination will have profound sociological and psychological ramifications. The child's rights of support and inheritance, as well as her future obligation to support her father are also involved. The establishment of paternity is a serious interference with the family and the fundamental right of privacy and requires the use of the least intrusive alternative. As enunciated by the Supreme Court in *Scott, supra,* the balancing test requires that "the more it intrudes upon essential standards of privacy, the greater must be the showing for the procedure's necessity." (*People* v. *Scott, supra,* 21 Cal.3d at p. 293.) What could be more essential than the most basic biological relationship—that of parent and child? The California Supreme Court has termed the interest in maintaining a parent-child relationship "a compelling one, ranked among the most basic of civil rights...." (*In re B. G.* (1974) 11 Cal.3d 679, 688 [114 Cal.Rptr. 444, 523 P.2d 244]) and said that "[f]reedom from an incorrect imposition of that relationship on either a parent or a child is an equally compelling interest." (*Salas* v. *Cortez* (1979) 24 Cal.3d 22, 28 [154 Cal.Rptr. 529, 593 P.2d 226].) "'If the child is to have anything, it must have a *right* to have his paternity ascertained in a fair and

---

[1] I entertain serious doubt that the court has jurisdiction over a nonparty to order this type of test. The majority cites *People* v. *Bynon* (1956) 146 Cal.App.2d 7 [303 P.2d 75] for the proposition that "there is no question but that the court has jurisdiction to order the blood tests." Bynon was decided in 1956. Three Supreme Court justices voted to grant certiorari. It has been cited by California courts on only two occasions since then; once in *People* v. *Crawford* (1962) 205 Cal.App.2d Supp. 858, 861 [23 Cal.Rptr. 566], and again in *People* v. *Browning, supra,* where, as I mentioned in the text, it was sharply criticized. In my mind, this hardly qualifies *Bynon* as dispositive of the issue. We are a court of equal standing. I find its reasoning unpersuasive.

efficient manner.'" (Citation omitted; italics in original.) (*Id.*, at pp. 33-34.)

The state's attempt to seek a blood sample to prove defendant's perjury and fraud clearly invades Tanya's rights of privacy and of the Fourth and Fifth Amendments.

I turn to the defendant. She has been charged with perjury and fraud. Given the serious ramifications of the order to submit to blood sampling, surely the prosecution is bound to use the least intrusive means of acquiring the evidence it needs to secure a conviction. I can think of several alternatives,—the use of the child's birth certificate, or the use of the administrative fair hearing process. The best alternative, however, is the filing of a civil suit to determine paternity. This is routinely done by county officials and is the method most desireable, for it protects the rights of all, and assures due process of law.

I would issue the writ.

Petitioner's application for a hearing by the Supreme Court was denied February 19, 1981. Caldecott, J.,* participated therein. Bird, C. J., and Tobriner, J., were of the opinion that the application should be granted.

---

*Assigned by the Chairperson of the Judicial Council.