[No. G003028. Fourth Dist., Div. Three. Apr. 16, 1986.]

MAURICE A. JAUREGUI, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮

COUNSEL

Ronald Y. Butler, Public Defender, Carl C. Holmes, Assistant Public Defender, Richard Aronson and Dennis O'Connell, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

Cecil Hicks, District Attorney, Michael R. Capizzi, Assistant District Attorney, William W. Bedsworth and James J. Mulgrew, Deputy District Attorneys, for Real Party in Interest.

OPINION

WALLIN, J.—Maurice Jauregui is charged with felony narcotic offenses. He seeks extraordinary writ relief from the denial of his motion to suppress evidence seized pursuant to warrant. Suspecting he had swallowed narcotics, police officers sought a warrant to retrieve them. After being told a telephonic warrant had been obtained for that purpose, Jauregui drank an emetic solution which caused him to regurgitate five balloons containing heroin. While conceding at least one defect in the warrant, real party nevertheless contends the officers acted reasonably and in good faith and urges we conclude *United States* v. *Leon* (1984) 468 U.S. 897 [82 L.Ed.2d 677, 104 S.Ct. 3405] precludes application of the exclusionary rule. We disagree.

On November 8, 1984, La Habra police officers obtained a search warrant for Jauregui's person and his residence, a motel room. They waited for five days to execute the warrant, which they did after an informant called and said Jauregui had heroin in the motel room—the equivalent of ten balloons, though then unpackaged—only five minutes before. The informant's call came in at approximately 4:10 p.m. A police surveillance of the room was set up at approximately 4:25 p.m. About 25 minutes later, Jauregui was lured out of his room and detained. From previous police contacts, Jauregui was known to carry balloons of heroin in his mouth. The detaining officer

observed him swallow hard, and suspected he had swallowed balloons of heroin.

Police officers proceeded to search Jauregui's person and room but found no heroin. They did discover narcotics paraphernalia and empty toy balloons in the room and placed Jauregui under arrest for unlawful possession of a syringe. The search lasted approximately 45 minutes, after which Jauregui was transported to the La Habra police station for booking. There, an officer called La Habra Community Hospital to solicit a doctor's advice regarding any potential medical problems resulting from the presence of balloons of heroin in the stomach. A doctor suggested Jauregui be transported to the hospital for evaluation and treatment because the situation could be life-threatening.

Jauregui was taken to the hospital at approximately 6 p.m., where he refused to consent to treatment. At no time did he exhibit symptoms of being under the influence of any narcotic. The first treating physician recommended taking X-rays to determine whether there were any visible foreign bodies in Jauregui's stomach. X-rays were taken without benefit of consent or warrant. A second treating physician opined the X-rays showed two balloons; a police officer examined the X-rays and agreed. The doctor recommended the administration of syrup of ipecac, an emetic solution which would induce vomiting.

Officers present at the hospital had at least two telephone conversations with a deputy district attorney regarding the situation. After results of the X-rays were discussed, a telephonic search warrant was sought and obtained. Confronted with that warrant and advised by the police officers that the court had authorized them to administer the emetic to him, Jauregui drank the syrup of ipecac about 8 p.m. He began regurgitating 15 or 20 minutes later and 5 balloons of heroin were recovered.

In this proceeding Jauregui challenges only the telephonic warrant, not the first search warrant issued for his person and motel room. Ironically, the two warrants are identical in purporting to authorize a search of Jauregui's person. Each seeks heroin and associated paraphernalia and commands a search of "the person of: Maurice Arteaga Jauregui, also known as WEECHO, Male, Mexican, age 44 years, approximately 5'-06", 130 pounds, brown hair and brown eyes; . . ." The telephonic warrant was limited to his person, although it additionally commanded execution "[b]etween the hours of 7:00 AM.M [sic] as needed per medical advise [sic] . . . ." Nothing in the telephonic warrant directed the manner of execution.

## I

In *People* v. *Bracamonte* (1975) 15 Cal.3d 394 [124 Cal.Rptr. 528, 540 P.2d 624], our Supreme Court found a Fourth Amendment violation when police officers relied on a similar warrant to force a suspect to drink an emetic solution and regurgitate balloons under similar circumstances. "Although in the instant case there clearly was probable cause to believe that the defendant had swallowed packages containing heroin, there was no warrant justifying the intrusion into her body. As previously set forth, the agents had procured a search warrant authorizing the search of the residence of defendant and her husband, their vehicles and *their persons*. It is quite clear, and the People admit, that the warrant was not intended to authorize intrusions beyond the surfaces of their bodies. Assuming arguendo that the magistrate intended the warrant to justify such further intrusions, we find that the warrant did not so specify. (U.S. Const., Amend. IV; Cal. Const., art. I, § 13.)" (*Id.,* at pp. 400-401, original italics, fn. omitted.)

■ While the prosecution argues the magistrate intended to issue a warrant authorizing a body intrusion, it concedes the warrant is defective for failing to so specify. As in *Bracamonte,* we "are not confronted with, nor do we decide, the issue of when, if at all, a search warrant may issue authorizing an intrusion into a suspect's body." (*Id.,* at p. 400, fn. 3.) The instant warrant simply failed to authorize the procedure performed, despite the officer's representation to Jauregui it did.

## II

■ The more difficult question is whether the "good faith exception" adopted by the Supreme Court in *United States* v. *Leon, supra,* 468 U.S. 897, prohibits application of the exclusionary rule to the evidence seized pursuant to this warrant. This issue was fully litigated in the trial court. (See *Higgason* v. *Superior Court* (1985) 170 Cal.App.3d 929 [216 Cal.Rptr. 817].) While the prosecution relies on *Leon,* its companion case, *Massachusetts* v. *Sheppard* (1984) 468 U.S. 981 [82 L.Ed.2d 737, 104 S.Ct. 3424], is more instructive. *Leon* adopted the good faith exception to evidence seized pursuant to a warrant later found defective because the affidavit in support of the warrant lacked probable cause. *Sheppard* applied the good faith exception to a warrant found defective on its face, because it did not particularly describe the items to be seized.

In *Sheppard,* the warrant affidavit supported the police request to seize evidence of murder. The warrant itself authorized a search for controlled substances. Nevertheless, the court refused to suppress murder evidence seized because "there was an objectively reasonable basis for the officers'

mistaken belief" the warrant authorized it. (*Id.*, at p. 988 [82 L.Ed.2d at p. 744].) A narcotics warrant form was used instead of a murder warrant form. The issuing magistrate was told by the officer the warrant might need to be changed and the officer observed changes made. "In sum, the police conduct in this case clearly was objectively reasonable and largely error-free. An error of constitutional dimensions may have been committed with respect to the issuance of the warrant, but it was the judge, not the police officers, who made the critical mistake. '[T]he exclusionary rule was adopted to deter unlawful searches by police, not to punish the errors of magistrates and judges.' *Illinois* v. *Gates,* 462 U.S. 213, 263, 76 L.Ed.2d 527, 103 S.Ct. 2317 (1983) (White, J., concurring in the judgment.) Suppressing evidence because the judge failed to make all the necessary clerical corrections despite his assurances that such changes would be made will not serve the deterrent function that the exclusionary rule was designed to achieve." (*Massachusetts* v. *Sheppard, supra,* 468 U.S. at pp. 990-991 [82 L.Ed.2d at p. 745], fn. omitted.)

Here, the prosecution argues the same logic: The officers were acting in good faith as evidenced by their recognition the first warrant for Jauregui's person did not authorize the administration of an emetic for an intrusive body search. We are urged to conclude the officers acted reasonably in seeking a warrant for that purpose and forced Jauregui to drink the emetic in good faith reliance on the fact the magistrate issuing the second warrant expressly authorized what the first did not. The record does support a conclusion the officers *subjectively* acted in good faith. But *Leon* and *Sheppard* also require the claim of good faith be *objectively* reasonable. (*United States* v. *Leon, supra,* 468 U.S. at p. 904 [82 L.Ed.2d at p. 686]; *Massachusetts* v. *Sheppard, supra,* 468 U.S. at p. 988 [82 L.Ed.2d at p. 743].) The prosecution dismisses the distinction in a conclusionary footnote, simply stating "[a] reasonable officer would have believed that [a body intrusion] search was authorized by the warrant."

What the prosecution ignores is the effect of the warrant itself, which expressly authorized a search by "ANY SHERIFF, CONSTABLE, MARSHAL, POLICEMAN OR ANY OTHER PEACE OFFICER IN THE COUNTY OF ORANGE, STATE OF CALIFORNIA[.]" There was no assurance that the affiant officer who knew the details and spoke with the issuing magistrate would be present at the time of the search. We must determine what the warrant meant to any person lawfully authorized to execute it. From that perspective, it is obvious the warrant did not authorize the body intrusion search Jauregui was compelled to undergo. The rule in *Bracamonte, supra,* 15 Cal.3d 394, is neither obscure nor complex.

Moreover, the effect of failing to expressly authorize a body intrusion search, let alone limit its scope to a medically approved procedure (see

*People* v. *Scott* (1978) 21 Cal.3d 284, 293 [145 Cal.Rptr. 876, 578 P.2d 123]), is hardly the type of technical, clerical error excused in *Sheppard.* As in *Bracamonte,* "[w]e are mindful of the Supreme Court's warning in *Schmerber* that '[t]he integrity of an individual's person is a cherished value of our society. That we today hold that the Constitution does not forbid the States minor intrusions into an individual's body under stringently limited conditions in no way indicates that it permits more substantial intrusions, or intrusions under other conditions.' (*Schmerber* v. *California* [1966] 384 U.S. 757, 772 [16 L.Ed.2d 908, 920, 86 S.Ct. 1826].)" (*People* v. *Bracamonte, supra,* 15 Cal.3d at p. 404.)

■ In yet another sense, a body intrusion search involves heightened Fourth Amendment considerations. (See *Rochin* v. *California* (1952) 342 U.S. 165 [96 L.Ed.2d 183, 72 S.Ct. 205, 25 A.L.R.2d 1396].) ■ While we reiterate our refusal to speculate in dicta what is required to force an unwilling arrestee to regurgitate the contents of his stomach, assuming a valid warrant could be so issued, we recognize greater privacy rights are associated with one's body than one's home. Any nonconsensual intrusion into the sanctity of the body requires circumspect adherence to the letter of the law.

■ The United States Supreme Court recently recognized the substantial interest involved in body intrusions in *Winston* v. *Lee* (1985) 470 U.S. 753 [84 L.Ed.2d 662, 105 S.Ct. 1611]. *Winston* involved an injunction preventing the state from compelling a robbery suspect to undergo surgery to retrieve a bullet suspected of having evidentiary value in his pending robbery prosecution. Balancing competing interests, the court held the proposed surgical intrusion was unreasonable under the Fourth Amendment. One of the factors considered was "the extent of intrusion upon the individual's dignitary interests in personal privacy and bodily integrity." (*Id.,* at p. 761 [84 L.Ed.2d at p. 669, 105 S.Ct. at p. 1617].) Quoting from *Schmerber,* the court reiterated that "[t]he importance of informed, detached and deliberate determinations of the issue whether or not to invade another's body in search of evidence of guilt is indisputable and great. [Citation.]" (*Ibid.*)

The evidence here contradicts an "informed, detached and deliberate" consideration of whether Jauregui ought to be compelled to regurgitate the contents of his stomach. The magistrate was given very limited information on the alleged life-threatening nature of the situation. Indeed, the evidence presented to the trial court casts great doubt on that allegation. The experts disagree on which is more dangerous: allowing the balloons to remain in the stomach, and hopefully pass naturally, or forcing an emetic which may cause a balloon to break during regurgitation. Moreover, the magistrate

made no inquiry as to the method of retrieval, hardly suggesting a detached and deliberate consideration of the issue.

The California Supreme Court has also recognized the sanctity of the human body and the need to balance competing interests before judicially authorizing an internal intrusion. (*People* v. *Scott, supra,* 21 Cal.3d 284.) "[T]he circumstances which permit penetrations beyond the body's surface are particularly limited, since such intrusions may readily offend those principles of dignity and privacy which are protected by the Fourth Amendment. . . . [¶] We therefore hold that where a warrant authorizing a bodily intrusion is sought, the issuing authority after finding probable cause to believe the intrusion will reveal evidence of crime, must apply an additional balancing test to determine whether the character of the requested search is appropriate. Factors which must be considered include the reliability of the method to be employed, the seriousness of the underlying criminal offense and society's consequent interest in obtaining a conviction [citations], the strength of law enforcement suspicions that evidence of crime will be revealed, the importance of the evidence sought, and the possibility that the evidence may be recovered by alternative means less violative of Fourth Amendment freedoms. [Citation.]" (*Id.,* at p. 293.)

While we agree the information supplied probable cause to believe Jauregui had balloons of heroin in his stomach, the magistrate failed to balance the competing interests before issuing the warrant, as required by *Winston* and *Scott.*

The warrant here did not authorize the police to require Jauregui regurgitate the contents of his stomach. No objectively reasonable officer could assume it did. The facially defective warrant requires exclusion of the evidence obtained.

### III

Perhaps anticipating our conclusion precluding the application of any good faith exception, the prosecution alternatively argues no warrant was required because of the exigencies of the situation. As in *Bracamonte,* the evidence falls far short of proving an emergency life-threatening situation, or imminent destruction of evidence, justifying a body intrusion search without a warrant. (*People* v. *Bracamonte, supra,* 15 Cal.3d at pp. 401-402; *People* v. *Rodriguez* (1977) 71 Cal.App.3d 547, 551 [139 Cal.Rptr. 509].)

Finally, the prosecution's concession the warrant is facially defective, coupled with our conclusion that defect requires exclusion of the evidence seized, obviates the necessity of resolving other alleged defects.

The alternative writ is discharged. Let a peremptory writ of prohibition issue restraining the superior court from taking any further action in the case except to grant Jauregui's motion to suppress evidence seized pursuant to the telephonic warrant. When this opinion becomes final the stay is dissolved.

Trotter, P. J., and Crosby, J., concurred.