SHAW, Judge,
concurring specially.
Based on my review of the record, I agree that Officer Lumpkin was not constitutionally required to obtain a search warrant in order to have Michael Lindsey’s stomach pumped. Officer Lumpkin testified to the circumstances surrounding the arrest and to the fact that he had both “prosecutorial” and “medical” concerns (R. 36) arising from Lindsey’s ingestion of a small plastic bag that appeared to be twisted closed in some fashion and that contained what Officer Lumpkin clearly identified as cocaine. Officer Lumpkin’s decision to seek immediate medical intervention in the early morning hours subsequent to the arrest was, in my view, reasonable under the circumstances.
Lindsey’s health and the preservation of the cocaine as evidence were of paramount concern to Officer Lumpkin, and similar consideration should be important to any law-enforcement officer witnessing the ingestion of a controlled substance under circumstances where that officer cannot be certain that the substance will not leak from its container and be absorbed into the suspect’s body. Law-enforcement officers must make split-second decisions at times, and I believe that a certain amount of deference is due an officer’s decision to seek medical intervention rather than to delay further action until a search warrant can be obtained. For an excellent discussion of the law in this area, see W. La-Fave, Search and Seizure, A Treatise on the Fourth Amendment § 5.3(c) (3d ed.1996), discussing, among other cases, Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).
However, as LaFave cautions, the jurisprudence in this area is both evolving and highly fact specific. In that respect, I note that State v. Strong, 493 N.W.2d 834 (Iowa 1992), and Oviedo v. State, 767 S.W.2d 214 (Tex.Ct.App.1989), cited in the main opinion, although persuasive, are not factually “on all fours” with the present case, in that both of those cases involved the ingestion of unsealed cocaine. An emergency situation was apparent in each case because of the very nature of the ingestion of the cocaine.
On the other hand, I note that People v. Bracamonte, 15 Cal.3d 394, 540 P.2d 624, 124 Cal.Rptr. 528 (1975), cited by LaFave, *1025 is, in my view, factually distinguishable from the present case. In Bracamonte, the California Supreme Court held that use of an emetic solution by medical personnel when the police knew that the defendant had swallowed several heroin-filled balloons was unconstitutional in the absence of a warrant. In that case, the court focused on the fact that the heroin was contained in small rubber balloons — vessels that the court concluded would probably pass through the defendant’s digestive system without rupturing and causing any ill effects. However, the court went on to note:
“Our judgment herein is necessarily based on the record before us. There is, of course, no right to conceal or destroy evidence of criminal conduct. If, in the instant case, there was reasonable cause to believe that the balloons would not pass through the digestive tract but instead would break open and thereby dissipate, not only would the potential health hazard possibly justify the intrusion into defendant’s stomach, but the fear of the destruction of evidence might also justify remedial action. We are unable in the instant case, however, to conclude that there is any basis upon which to uphold this non-consensual, warrantless search and the balloons should not have been received in evidence.”
15 Cal.3d at 404, 540 P.2d at 631, 124 Cal.Rptr. at 535.
Based on the testimony in the present case, I cannot equate the rubber balloons at issue in Bracamonte with the plastic bag that Officer Lumpkin saw only briefly and that Lindsey swallowed after a brief struggle in which Officer Lumpkin attempted to remove the bag from Lindsey’s mouth. I believe that, based on the information that he had before him, Officer Lumpkin had reasonable cause to question the structural integrity of the plastic bag. To hold the opposite (that Officer Lumpkin should have known that the bag would pass through Lindsey’s body without leaking), as Lindsey contends we should do, would, in my estimation, have required Officer Lumpkin to make a critical decision that he was ill-equipped to make.